**Reversed and Remanded and Opinion filed June 10, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00251-CV

### ADVANCED PERSONAL CARE, LLC, Appellant

### V.

### JACQUELYN CHURCHILL, EVERETT CHURCHILL AND JED, INC., Appellees

**On Appeal from the 269th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2011-04324**

## O P I N I O N

This is an appeal from a judgment after a nonjury trial. The lawsuit began as a dispute about a buyer's purchase of leased property and ended as a claim for breach of a settlement agreement. The settlement agreement provided that as consideration for the parties' release of their claims, the sellers would sell the property to the buyer at a reduced rate. After the buyer refused to complete the sale, each side alleged that the other breached the settlement agreement. The trial

court found that the buyer breached the agreement, and enforced the release while refusing to enforce the property sale. We reverse and remand the case for the trial court to determine whether the sellers elected to treat the settlement agreement as continuing or as terminated.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellees Jacquelyn and Everett Churchill own a residence in Houston in which they operated an assisted-living facility through their company, appellee JED, Inc. (collectively, "the Sellers"). In December 2009, they entered into a lease agreement with option to purchase ("the Option Contract") with appellant Advanced Personal Care, LLC ("the Buyer"). The parties agreed that if the Buyer exercised the option, then it could purchase the residence and the operations (collectively, "the Property") for $200,000.

During the tenancy, the parties' relationship became strained. The Buyer exercised the option to purchase, but the Sellers served the Buyer with a notice to vacate the premises, so the Buyer sued for damages and injunctive relief, and the Sellers asserted counter-claims. The parties agreed that while the case was pending, payments that would be due under the Option Contract would be paid into the registry of the court.

The parties next agreed to settle their dispute. As part of the consideration for releasing their claims against one another, the Sellers would sell the Property to the Buyer for $170,000. The Sellers were responsible to have all documents prepared for transferring the Property, and the Buyer was to receive all funds that were deposited in the court's registry in connection with this case. To effectuate the settlement, the parties executed two documents with the same effective date: a

---

[1] If the settlement agreement is continuing, the seller must sell the property to the buyer; if the agreement is terminated, the parties revert back to their original positions in the lawsuit.

"Full and Final Mutual Compromise and Release" ("the Release") and a "Real Estate Sales Contract" ("the Sales Contract"). The Sales Contract contained language identifying the parties' sole and exclusive remedies for a default before closing. If one side defaulted before closing, the other side was permitted to terminate the Release and the Sales Contract and the parties would resume their litigation against one another. If the non-defaulting party already had incurred out-of-pocket expenses to document the transactions, then that party also could recover those expenses and attorney's fees. If the Sellers defaulted, the Buyer had the additional option to enforce specific performance of the sale.

The Buyer asserted that the Sellers breached the Sales Contract and refused to proceed with the sale. Both sides then amended their pleadings. The Sellers alleged that the Buyer breached the agreement, and Buyer asserted that it properly terminated the agreement due to the Sellers' default.[2]

The parties agreed to bifurcated proceedings in which they would first try their respective claims for breach of the Sales Contract without a jury. If the trial court concluded that the Buyer properly terminated the contract so that the Release was no longer binding, then the parties would try their claims under the Option Contract before a jury. The day after the first phase of the trial, the trial court issued findings of fact and conclusions of law in which it held that (a) only the Buyer materially breached the Release and the Sales Contract, (b) the Buyer had released its claims against the Sellers, and (c) it was unnecessary to proceed with the second phase of trial. After the parties filed opposing motions for release of the registry funds, the trial court signed two orders releasing money to each side.[3]

---

[2] The Sellers also added a third-party claim against the Buyer's owner, but judgment was not rendered against him and he has not appealed.

[3] The two orders contain different amounts, but neither is identified as an amended order.

In the final judgment, the trial court ruled that the Buyer was to take nothing on its claims against the Sellers, and awarded the Sellers nearly $39,000 in attorney's fees, but no other relief. The Buyer appealed, but the Sellers did not file a responsive brief.

## II. ELECTION OF REMEDIES

In its dispositive issue, the Buyer argues that the trial court erred as a matter of law in failing to order specific performance of the Sales Contract because (a) the Release and the Sales Contract are part of a single Settlement Agreement; (b) upon the Buyer's material breach of that agreement, the Sellers were required to elect whether to terminate the entire agreement or to treat the entire agreement as continuing; and (c) because the Sellers chose to enforce the Release portion of the Settlement Agreement, they elected to treat the entire agreement as continuing, thereby waiving the Buyer's breach as an excuse for their own nonperformance of the Sales Contract. We agree with the first two points. We agree that there are not two independent contracts; there is one Settlement Agreement. We further agree that under the common-law principle of election of remedies, the Sellers were required to elect whether to treat the Settlement Agreement as continuing or as terminated.

We do not agree with the third point, that the record conclusively establishes that the Seller elected to treat the agreement as continuing. Instead, the record shows that the trial court based its ruling solely on language in the Sales Contract that if the Sellers breached the contract, the Buyer could elect to enforce the sale or to terminate "both" the Release and the Sales Contract. Because the trial court found that the Buyer, not the Sellers, breached the Sales Contract, it held that the Buyer could neither terminate the Release nor enforce the sale. We cannot make the missing finding concerning the Sellers' election, because on this record, we

4

cannot say that it has been conclusively established that the Sellers elected to treat the Settlement Agreement as continuing or as terminated. We instead reverse and remand without reaching the Buyer's remaining issues.

## A. The effective dates, common purpose, and terms of the Release and the Sales Contract establish that they form a single, indivisible Settlement Agreement.

The law of contracts applies to settlement agreements and releases. *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 178 (Tex. 1997); *Hernandez v. LaBella*, No. 14-08-00327-CV, 2010 WL 431253, at *3 (Tex. App.—Houston [14th Dist.] Feb. 9, 2010, no pet.) (mem. op.). When we interpret a written contract, "our primary concern is to ascertain and give effect to the intent of the parties as expressed in the contract." *In re Serv. Corp. Int'l*, 355 S.W.3d 655, 661 (Tex. 2011) (orig. proceeding) (per curiam). To understand that intent, we examine the contract as a whole in light of the circumstances present when the contract was entered. *Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445, 451 (Tex. 2011). In this examination, "separate documents executed at the same time, for the same purpose, and in the course of the same transaction are to be construed together." *Jim Walter Homes, Inc. v. Schuenemann*, 668 S.W.2d 324, 327 (Tex. 1984); *Nat'l City Bank of Ind. v. Ortiz*, 401 S.W.3d 867, 884 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (op. on reh'g). In appropriate circumstances, "a court may determine, as a matter of law, that multiple documents comprise a single written contract" and "may construe all the documents as if they were part of a single, unified instrument." *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000). Where, as here, a contract is unambiguous, its construction is a question of law that we review de novo. *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011).

We agree that the Release and the Sales Contract are part of a single

agreement. The Sellers executed both documents on the same day, and the Buyer executed them on successive days, but the effective date of both documents was October 25, 2011. Both documents were intended to resolve the parties' disputes concerning the Property, and the Property sale is expressly identified as the consideration for the Release. The documents also refer to each other and to the litigation, and treat the Release and all of the documents effectuating the sale as a single agreement, as the following language from the two documents shows:[4]

### Full and Final Mutual Compromise and Release

*Consideration.*

A.    The Note/Transfer Documentation:  The parties hereto agree to the following terms for financing the purchase . . . [and] transfer of the Property:

(i)    A Note will be executed by [the Buyer], payable to the [Sellers] in the amount of $170,000.00, financed at the rate of seven percent (7%) per annum amortized over twenty-five (25) years.

. . . .

(v)    The [Sellers] will arrange for the preparation of all documentation necessary to document the transfer of title and Note. . . .

. . . .

D.    **Closing Date to be on or before October 31, 2011**:  The parties hereto will close on this transaction on or before October 31, 2011.  The parties hereto recognize that **time is of the essence** as this matter is set for trial in December, 2011 and much discovery remains to be completed to ready this matter for trial.

. . . .

*Entire Agreement and Further Assurances.*

It is further understood and agreed that this Release and all documentation required and/or executed in furtherance of the goals of

---

[4] To increase readability, we have standardized capitalization and applied the same formatting to both documents.

6

this Settlement Agreement & Mutual Release contains the entire agreement between the parties . . . .  [The Buyer] and the [Sellers] agree to execute any and all documents necessary to effectuate the understandings, assignments and agreement contained in [the "Consideration" section] above.

### Real Estate Sales Contract

*Seller's Disclosure at Time of Closing* . . . Sellers have no personal knowledge as to the current condition of the Property other than the plumbing defects which have been the subject of litigation in Cause No. 2011-04324.  Buyers have agreed to repair these defects using the funds which are currently being held in the Harris County Court Registry.

. . . .

*Buyer's Default; Remedies before Closing*.  If Buyer fails to perform any of its obligations under this contract ("Buyer's Default"), Seller may terminate this contract as well as the Full and Final Mutual Compromise and Release signed by the Sellers on October 6, 2011 [sic] by giving notice to Buyer on or before Closing.  The parties will then be permitted to reopen discovery and proceed to trial in Cause No. 2011-04324 pending in Harris County, Texas.  If Buyer's Default occurs after Seller has incurred costs to perform its obligations under this contract and Seller terminates this contract in accordance with the first sentence, Buyer will also pay to Seller as liquidated damages Seller's actual out-of-pocket expenses incurred to document the Settlement Agreement and transaction documents related hereto ("Buyer's [sic] Expenses"), within ten days after Buyer's receipt of an invoice from Seller stating the amount of Seller's Expenses accompanied by reasonable evidence of Seller's Expenses and attorney[']s fees.  The foregoing constitutes Seller's sole and exclusive remedies for a default by Buyer before closing.

. . . .

*Entire Agreement.*  This contract, its exhibits, the Full and Final Mutual Compromise and Release signed by the Sellers on October 6, 2011 [sic] and any Closing Documents delivered at closing constitute the entire agreement of the parties concerning the sale of the Property by Seller to Buyer.

. . . .

 *"As Is, Where Is"* . . . The purchase price was bargained on the basis of an "as is, where is" transaction and reflects the agreement of the parties that there are no representations, disclosures, or express or implied warranties, except those in this contract, the Full and Final Mutual Compromise and Release signed October 6, 2011 [sic] and the closing documents.

 Buyer is not relying on any representations, disclosures, or express or implied warranties other than those expressly contained in this contract, the Full and Final Mutual Compromise and Release signed October 6, 2011 [sic] and the Closing Documents.

 *Schedule of Debt* . . . If the Seller fails to make timely payments to the lienholder, the lienholder may attempt to collect the debt by foreclosing on the lien and selling the Property at a foreclosure sale. Such failure by Seller constitutes a breach of this Sales Contract, the Full and Final Mutual Compromise and Release signed by the Sellers on October 6, 2011 [sic] and all closing documents.

Based on the foregoing, we conclude as a matter of law that the Release and the Sales Contract are two parts of a single Settlement Agreement. *See McDowell v. Bier*, No. 2-09-231-CV, 2010 WL 1427244, at *1, *4 (Tex. App.—Fort Worth Apr. 8, 2010, no pet.) (mem. op.) (holding that a release and a sales contract must be construed together because they were executed contemporaneously, they both concerned the release of the parties' claims against each other, and the release was conditioned on the sales contract); *Giles v. Corbett*, 293 S.W. 180, 182 (Tex. Civ. App.—Galveston 1927, no writ) (explaining that a check and a letter received in exchange for a release, "all being a part of the same transaction and having for their purpose to effect a compromise and settlement, . . . are 'in the eye of the law one instrument and will be read and construed together as if they were as much one in form as they are in substance'").

**B. The Sellers were required to elect whether to treat the Settlement Agreement as continuing or as terminated.**

 Breach of contract can be waived. *Ramex Constr. Co. v. Tamcon Servs. Inc.*,

29 S.W.3d 135, 137 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (citing *Chilton Ins. Co. v. Pate & Pate Enters., Inc.*, 930 S.W.2d 877, 888 (Tex. App.—San Antonio 1996, writ denied) (sub. op.)). The election of whether to waive the breach ordinarily is made when the breach occurs. *See Hanks v. GAB Bus. Servs., Inc.*, 644 S.W.2d 707, 709 (Tex. 1982). Thus, upon the Buyer's breach of the Settlement Agreement, the Sellers had a choice. If they were to treat the contract as terminated, then the breach would excuse them from any further performance. *See Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (per curiam). If the Sellers instead were to treat the contract as continuing, then they would waive the Buyer's breach as an excuse for their own failure to perform the Property sale. *See, e.g.*, *Long Trusts v. Griffin*, 222 S.W.3d 412, 415–16 (Tex. 2006) (per curiam); *Hanks*, 644 S.W.2d at 708–09.

The Buyer placed the election-of-remedies problem before the trial court in its detailed answer to the Sellers' breach-of-contract counterclaim. The Buyer alleged that even if it breached the Settlement Agreement, the Sellers "made an election to enforce that agreement," and thus, they were required to perform their contractual obligations. The Buyer therefore argued that if the trial court enforced the Release, it also should release the funds in the court's registry to the Buyer and order the Sellers to transfer the Property to the Buyer upon the financing terms stated in the Settlement Agreement. However, the trial court failed to answer the fact question of whether the Sellers elected to treat the Settlement Agreement as terminated or as continuing. *Cf. In re Gen. Elec. Capital Corp.*, 203 S.W.3d 314, 316 (Tex. 2006) (orig. proceeding) (per curiam) (explaining that unless the surrounding facts and circumstances are undisputed, waiver usually is a question of fact).

9

**C.** **The trial court erred in failing to address the question of the Sellers' election.**

The trial court issued findings of fact and conclusions of law, but it did not find that the Sellers waived the Buyer's breach (or otherwise treated the contract as continuing) or that the Sellers were excused from further performance (or otherwise treated the contract as terminated).[5] Although we will presume in some circumstances that the trial court made omitted findings in support of its judgment,[6] the presumption does not apply where, as here, the record reveals that the trial court based its judgment on an erroneous interpretation of law, and failed to answer a factual question necessary to resolve the case under a correct interpretation. *See Jones v. Smith*, 291 S.W.3d 549, 553–555 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

The circumstances here are analogous to those in *Jones.* In that case, a property owner sold his property, but the original deed conveying the property was lost or destroyed. *Id.* at 550. Two friends testified that they both were present at the closing, but each claimed that the deed conveyed the property only to him. *Id.* Each man later recorded a replacement deed. *Id.* at 551. The trial court made findings identifying the date, grantor, and grantee identified in the deeds that were recorded, but made no findings in connection with the lost deed. *Id.* at 551–52. Finally, the trial court concluded that one of the litigants had title to the property under the first-recorded replacement deed. *Id.* at 552. We explained that the findings of fact and conclusions of law revealed that instead of identifying the person named as the grantee in the lost deed, the trial court erroneously treated a conveyance as effective only if recorded. *Id.* at 554. We therefore reversed and

---

[5] The Buyer requested additional or amended findings two months later, but the Rules of Civil Procedure provide that such requests "shall be made within ten days after the filing of the original findings and conclusions by the court." TEX. R. CIV. P. 298.

[6] *See* TEX. R. CIV. P. 299.

remanded the case. *Id.* at 555.

Here, the record shows that the trial court did not treat the Settlement Agreement as a single indivisible contract and did not consider the question of the Sellers' election of remedies under the common law; instead, the trial court treated the Release and Sales Contract as separate agreements, and considered election of remedies only when determining whether the Sellers had breached the Sales Contract so as to trigger a contractual provision governing the Buyer's election of remedies. The trial court's interpretation of law can be seen in the following findings of fact and conclusions of law:

- "under the Release and under the Sales Contract," the Sellers materially performed their obligations, and the Buyer materially breached its obligations under "both agreements";

- the Release was effective upon its execution; therefore, "as of October 25, 2011," the Buyer released its claims against the Sellers;

- "the Sales Contract provided an exception to [the Buyer's] [R]elease": if the Buyer properly terminated the Sales Contract, then its terms permitted the Buyer either to seek specific performance or to continue prosecuting its claims against the Sellers "despite the terms of the Release";

- the Buyer did not terminate the Sales Contract according to its terms; and

- the Buyer released its claims against the Sellers and should take nothing on its claims.

The Buyer attempted to bring to the trial court's attention the question of the Sellers' common-law election of remedies, but the trial court's response showed that it considered only the availability of the Buyer's contractual election of remedies. For example, after the trial court read its findings of fact and conclusions of law showing that it was enforcing the release, the Buyer's attorney asked about proceeding with the closing on the Property. The trial court responded, "I don't think that that was squarely in front of me; but the usual — the usual rule of law is that a party in breach can't enforce a contract." This is true in

11

those cases in which the other party chooses to treat the breach as terminating the contract, but there is more to the rule. "[I]f, after the breach, the non-breaching party continues to insist on performance by the party in default, 'the previous breach constitutes no excuse for nonperformance on the part of the party not in default and the contract continues in force for the benefit of both parties.'" *Henry v. Masson*, 333 S.W.3d 825, 840 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (quoting *Chilton Ins. Co.*, 930 S.W.2d at 887). Thus, if the non-defaulting party continues to insist on performance, then so can the breaching party.

That is just what the Buyer attempted to do here, arguing in its pleadings and in its post-trial motions that if the Sellers elected to enforce the Release, then they were obligated to proceed with the Property sale. But the final judgment shows that the trial court refused to address the question. Instead, it denied the Buyer's "request to transfer title or otherwise require specific performance of the sale of the Property," while also stating that it "does not find or otherwise rule that [the Sellers] are excused from their obligations under the [Release] and the [Sales Contract]." Thus, there is no express finding or ruling on the question of the Sellers' election, and none can be implied.

The Buyer argues that no finding is necessary because the record conclusively establishes that the Sellers elected to treat the Settlement Agreement as continuing, but we do not find the record to be so clear or complete. The Sales Contract portion of the agreement provided that the Sellers' sole remedy for the Buyer's default before closing was to terminate the Settlement Agreement, recover their out-of-pocket expenses, reopen discovery, and proceed to trial on the parties' claims under the Original Agreement, and there is evidence that the Sellers chose this option. Jacquelyn Churchill was the only Seller to testify at trial, and in accordance with that contractual provision, her testimony illustrates that the Sellers

12

were willing to perform under the original Option Contract, but not under the breached Settlement Agreement:

> Q: [W]ould you be willing to abide by the agreement that everybody signed off on, full and final release and settlement?
>
> A: The — this one?
>
> Q: Would you be willing to abide by your word that you signed off on?
>
> A: Well, the — no. I — I don't — the original 200,000 amount, I would.

As for reopening discovery and proceeding to trial on the original claims, the "trial court activity inquiry sheets" in the record show that after the breach, the trial court signed an order compelling a deposition, but the record does not indicate who sought the discovery. The record also indicates that the Sellers first amended their pleading to raise a claim for breach of the Settlement Agreement just six weeks after the breach occurred, and three months later, the trial court denied the Sellers' motion for partial summary judgment, but neither the pleading nor the motion is in the record. Although the Sellers' counsel argued at trial that the Release and the Sales Contract were separate and the Release remained in effect unless the Buyer properly terminated both agreements due to the Sellers' breach, the same attorney also argued for recovery of attorney's fees that were recoverable only if the contract was terminated. We are unwilling to treat a legal argument made by counsel a year after the breach as conclusive evidence that the Sellers elected to treat the Settlement Agreement as continuing, given that (1) the argument is wrong as a matter of law; (2) it contradicts the only factual evidence from the Sellers themselves about their willingness to perform the Settlement Agreement; (3) the Sellers sought summary judgment of some claims after the breach, but we do not know the claims or grounds addressed; and (4) the record shows that someone reopened discovery, but does not show whether it was the Buyer or the Sellers.

## III. Conclusion

Although the Buyer has requested rendition rather than remand, remand is the relief to which it is entitled. *See Jones*, 291 S.W.3d at 555. We therefore reverse the trial court's judgment and remand the case. *See* Tex. R. App. P. 43.3(a) ("When reversing a trial court's judgment, the court must render the judgment that the trial court should have rendered, except when . . . a remand is necessary for further proceedings . . . ."); *Garza v. Cantu*, No. 14-11-00724-CV, 2013 WL 5451592, at *9–10 (Tex. App.—Houston [14th Dist.] Aug. 27, 2013, pet. denied) (sub. op.) (remanding for a new trial where that was the relief authorized, and although the appellant asked only for rendition, it "did not adopt a 'rendition-or-bust' strategy"). In light of this disposition, we do not reach the Buyer's challenge to the orders concerning the release of registry funds, because our remand makes those orders interlocutory. The trial court remains free, however, to issue such orders as are necessary to protect the parties' interests pending final judgment or to apply credits and offsets in the final judgment as necessary to account for the over- or under-disbursement of funds to any party.


/s/    Tracy Christopher
        Justice


Panel consists of Justices Boyce, Christopher, and Brown.

14