**Affirmed and Memorandum Opinion filed July 15, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00981-CV

---

## O.C.T.G., L.L.P AND SOJOURN PARTNERS, L.L.C., Appellants

## V.

## LAGUNA TUBULAR PRODUCTS CORPORATION AND LTP REAL ESTATE, LLC F/K/A LTP REAL ESTATE, INC., Appellees

---

**On Appeal from the 190th District Court
Harris County, Texas
Trial Court Cause No. 2013-44749**

---

## M E M O R A N D U M   O P I N I O N

In this property dispute, the appellants challenge the trial court's ruling on competing applications for a temporary injunction to prevent them from using a portion of the appellees' real property. They also contend that the trial court violated their due-process rights by denying them the opportunity to cross-examine adverse witnesses at the temporary-injunction hearing. We conclude that the trial court did not abuse its discretion in ruling on the issues or in enforcing time limits

to which the appellants' counsel expressly agreed. We accordingly affirm the trial court's order.

## I. BACKGROUND

Appellant Sojourn Partners, L.L.C. owned the property at issue in this case on which its affiliate, appellant O.C.T.G., L.L.P., operated its business; we refer to these two appellant companies collectively as "Sojourn." Sojourn sold the property to appellee LTP Real Estate, LLC f/k/a LTP Real Estate, Inc. LTP's affiliate, appellee Laguna Tubular Products Corporation, operates its business on the purchased property; we refer to the two appellee companies collectively as "Laguna." The dispute between Sojourn and Laguna concerns their differing interpretations of the documents involved in this transaction, which addressed not only the sale of the property, but also an agreement for Sojourn to provide "threading" services on Laguna's products at a worksite on the premises. When Laguna terminated the contract for Sojourn's services, the parties disagreed about their respective rights to use the worksite on Laguna's premises. Sojourn asserted that it was given an exclusive easement over the worksite, but Laguna argued that Sojourn had only a revocable license.

The parties filed separate lawsuits and competing applications for temporary injunctions in which each sought to exclude the other party and its equipment from the worksite. After consolidating the cases, the trial court conducted a single hearing addressing both requests for injunctive relief. The parties requested three hours for the hearing, and the trial court informed them that each side would have a total of ninety minutes to present its own evidence and to respond to the opposing side's evidence. Sojourn's counsel agreed, used all of the allotted time in examining Sojourn's witnesses, and expressly stated that she was not requesting more time; however, after each of Laguna's witnesses testified, Sojourn's attorney

2

objected that it was being denied the right to cross-examination in violation of its right to due process.

The trial court denied Sojourn's application for a temporary injunction, granted Laguna's application, and ordered Sojourn to remove its threading equipment from the worksite within thirty days.[1]  On appeal, Sojourn challenges the trial court's ruling on the temporary-injunction applications and reurges its due-process objections.

## II.  THE TEMPORARY INJUNCTION

The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending trial on the merits.  *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (op. on reh'g).  To obtain a temporary injunction, an applicant is not required to establish that it will prevail upon a final trial on the merits, but must plead and prove that (a) it has a cause of action against the opposing party; (b) it has a probable right on final trial to the relief sought; and (c) it faces probable, imminent, and irreparable injury in the interim.  *Sharma v. Vinmar Int'l, Ltd.*, 231 S.W.3d 405, 419 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing *Butnaru*, 84 S.W.3d at 204).  Litigants generally are not entitled to temporary injunctive relief as a matter of right.  *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993) (per curiam).  The decision to grant or deny such relief instead is committed to the trial court's discretion, and we will uphold its ruling absent a clear abuse of discretion.  *Id.* at 58.

---

[1] The trial court initially stayed enforcement, but after a hearing on Laguna's motion for reconsideration, it vacated the stay.  When Sojourn still failed to comply with the injunction, Laguna filed a motion in this court for enforcement, and Sojourn responded by again moving for a stay.  We referred the enforcement proceeding to the trial court, which made findings of fact and recommended that the injunction be enforced.  In accordance with the trial court's findings and recommendations, we granted Laguna's motion for enforcement and denied Sojourn's motion for a stay.

3

Here, Sojourn argues that the trial court abused its discretion in denying its application and granting Laguna's application because "Sojourn is undisputedly the owner of an exclusive easement on Laguna's property," and Laguna has mischaracterized the easement as a license. Thus, Sojourn challenges the trial court's determination that Laguna proved a probable right to relief upon a trial on the merits.

This is a difficult challenge to meet, given the standard of review. A party challenging the trial court's ruling on the requested relief must establish that, with respect to resolution of factual issues, the trial court reasonably could have reached but one decision. *Wash. DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 740 (Tex. App.—Houston [14th Dist.] 2013, pet. filed) (en banc). Because the trial court acts as the factfinder at the temporary-injunction hearing, we must defer to its decisions that are based on conflicting evidence. *Sharma*, 231 S.W.3d at 419. In reviewing the evidence, we will draw all legitimate references in the light most favorable to the trial court's order. *Id*. If some evidence reasonably supports the trial court's decision, then it has not abused its discretion. *Butnaru*, 84 S.W.3d at 211. This is true even if we would have reached a contrary conclusion on the same evidence. *Id.*

Because there is conflicting evidence about whether the parties intended Sojourn to have a revocable license or an easement, we cannot say that the trial court abused its discretion in determining that Laguna has shown a probable right to relief when the issue is finally tried on the merits. The conflicting evidence is found in (a) the Purchase and Sale Agreement, which refers to a license to use the worksite rather than to an easement; (b) the Tubular Finishing Services Agreement incorporated in the Purchase and Sale Agreement, which refers only to a revocable license to use that area and which terminates when the finishing-services contract

4

terminates; (c) the Special Warranty Deed, which lists other easements, but mentions neither an easement over the worksite nor a license to use the space; (d) the Access Easement and License Agreement, which refers to "an exclusive easement and fully paid-up irrevocable license" to use the worksite; and (e) the testimony of witnesses who offered opposing views of the parties' intentions. *See Progressive Cnty. Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 807–08 (Tex. 2009) (per curiam) (where the documents themselves are ambiguous or the existence of multiple documents creates an ambiguity, the court may consider extrinsic evidence of the parties' intent).

The Purchase and Sale Agreement contained the following provisions:

**1.2    Reservations and Additional Rights.**    In addition to the purchase and sale of the Property under the terms and conditions provided herein, [Sojourn] and [Laguna] agree to the following terms:

. . . .

(i) [Laguna] will grant [Sojourn] (and its affiliates, designees, successors and assigns) an unrestricted fully paid up license and right to use, and access to, the section of the tubing facility building in which the present high-speed PMC Range III threadline is located . . . for so long as [Sojourn] (and its affiliates, designees, successors and assigns) requires.    Threadline and all associated equipment to remain [Sojourn's].

(j) [Laguna] shall . . . contract with [Sojourn] to provide [Laguna] the services set forth in the Tubular Finishing Services Agreement attached hereto as Exhibit "C", which shall be executed and delivered by the parties thereto at the Closing . . . .

. . . .

The provisions of this Section 1.2 shall survive the Closing and the execution and delivery at Closing of the deed for the Property.

. . . .

**10.16    Exhibits.**    Any exhibits attached to this Agreement are incorporated into this Agreement and made a part hereof.

5

The Tubular Finishing Services Agreement provided that for five years, and with certain exceptions, Sojourn would perform testing and threading services on all oil country tubular goods that Laguna processed or serviced on the purchased property. The parties agreed that the threading work would be performed at the worksite on Laguna's property on which Sojourn had installed the threadline and related equipment, and that during the term of the agreement, Sojourn was granted "an exclusive, revocable (upon termination of this Agreement) license to enter, improve . . . use and occupy the Worksite(s) for the purpose of providing Services on [Laguna's] Products." The parties further agreed that at the termination of the agreement, Sojourn would return possession of the worksite to Laguna. Finally, if a party was given written notice of a default and failed to cure the default within thirty days, the non-defaulting party was permitted to terminate the agreement. Laguna produced evidence that it terminated the service agreement; thus, it argued that Sojourn's license to use the property was terminated as well.

In contrast to these documents, it is stated in the Access Easement and License Agreement that

> [Laguna] . . . hereby grants and conveys for the benefit of [Sojourn] and [Sojourn's] tenants, employees, contractors, agents, customers and invitees . . . an exclusive easement and fully paid-up irrevocable license and right to use the [threading area].

> To Have and To Hold the herein described easements and license unto [Sojourn] and its successors and assigns for so long as the Property is used by Sojourn, its successors and assigns for the purposes herein granted; provided further, in the event the hereinabove described easement shall no longer be used for the purposes for which it is required, said easement shall automatically terminate and be of no further force or effect.

On appeal, Sojourn does not address the Tubular Finishing Services Agreement on which Laguna relies. Instead, it appears to argue that we should

6

reverse and render judgment granting its temporary-injunction application based solely on the language of the Access Easement and License Agreement, or alternatively, on a combination of that agreement, the Purchase and Sale Agreement (without the other agreements incorporated therein), and the testimony that favors the existence of an easement. We cannot do so.

In order to ascertain the entire agreement between contracting parties, separate documents executed in the course of the same transaction may be construed together. *Jim Walter Homes, Inc. v. Schuenemann*, 668 S.W.2d 324, 327 (Tex. 1984); *Nat'l City Bank of Ind. v. Ortiz*, 401 S.W.3d 867, 884 (Tex. App.— Houston [14th Dist.] 2013, pet. denied) (op. on reh'g). In appropriate circumstances, "a court may determine, as a matter of law, that multiple documents comprise a single written contract" and "may construe all the documents as if they were part of a single, unified instrument." *Advanced Pers. Care, LLC v. Churchill*, No. 14-13-00251-CV, 2014 WL 2583778, at *3 (Tex. App.—Houston [14th Dist.] June 10, 2014, no pet. h.) (quoting *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000)). This is true even if the documents were executed at different times and do not expressly refer to each other. *Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 840. Even in the case that Sojourn cites as authority for looking solely to the language of the easement, the Texas Supreme Court held that the easement at issue had to be construed in light of other documents that were part of the same transaction—including, as here, a service agreement. *See DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 101–02 (Tex. 1999) (explaining that the express easement had to be construed in light of an electrical-service agreement and tariff because the service agreement and easement were executed at the same time, "the service agreement expressly incorporates the tariff, and the tariff expressly recognizes that the easement agreement contains

further terms that affect the service contract").

On this record, the trial court reasonably could have concluded that the portion of the parties' agreement concerning Sojourn's use of the threading area is ambiguous, and that Laguna will probably prevail when the evidence concerning the parties' intentions is finally presented to the trier of fact. That is not a certainty; at this point, the construction of the parties' agreement has not been finally determined, and neither the trial court's ruling on the temporary-injunction applications nor our affirmance of that ruling implies "any kind of determination that becomes the law of the case." *See Glattly v. Air Starter Components, Inc.*, 332 S.W.3d 620, 638 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). We cannot assume that the evidence presented at a temporary-injunction hearing will be the same as the evidence presented at a full trial on the merits. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978). We conclude only that the trial court did not abuse its discretion in ruling as it did on the evidence before it.

### III. SOJOURN'S DUE-PROCESS OBJECTIONS

To satisfy the requirements of due process, a party must have a reasonable opportunity to cross-examine adverse witnesses. *Davidson v. Great Nat'l Life Ins. Co.*, 737 S.W.2d 312, 314 (Tex. 1987). This principle applies to a hearing on an application for a temporary injunction, even though the trial court may rule on the application "'on the basis of procedures that are less formal and evidence that is less complete than i[n] a trial on the merits.'" *Exec. Tele-Commc'n Sys., Inc. v. Buchbaum*, 669 S.W.2d 400, 402 (Tex. App.—Dallas 1984, no writ) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834, 68 L. Ed. 2d 175 (1981)). But the right to cross-examination is not unlimited. *Harris County v. Inter Nos, Ltd.*, 199 S.W.3d 363, 368 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Texas Emp'rs' Ins. Ass'n v. Garza*, 557 S.W.2d 843, 845 (Tex. Civ.

App.—Corpus Christi 1977, writ ref'd n.r.e.)). The trial court may impose reasonable limitations on the presentation of evidence at the temporary-injunction hearing. *See Elliott v. Lewis*, 792 S.W.2d 853, 854–55 (Tex. App.—Dallas 1990, no pet.) (holding that the trial court abused its discretion by arbitrarily terminating the temporary-injunction hearing during the cross-examination of the first witness without giving the other party a reasonable opportunity to be heard). A limitation is not reasonable if it is arbitrary, *see id.*, or if it deprives a party of the right to offer any evidence. *City of Houston v. Hous. Lighting & Power Co.*, 530 S.W.2d 866, 869 (Tex. Civ. App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.) (recognizing the trial court's authority to impose reasonable limitations that do not "completely deprive a party of the right to offer any evidence").

The trial court did not restrict the scope of cross-examination or deny Sojourn the right to present evidence; it simply limited the time for the hearing to the three hours that the parties themselves requested. Before taking evidence, the trial court told the parties that only three hours had been set aside for the hearing on the competing applications for injunction, and that each side would have a total of ninety minutes for all of its examination and cross-examination of witnesses. Sojourn's counsel agreed on the record to these time limitations. Each side had the same time and opportunity to examine and cross-examine the witnesses, and each side exercised its own judgment as to how best to use the time available to it. At least three times during Sojourn's presentation of evidence, the trial court informed counsel of the amount of time that had been used or that remained. Sojourn's counsel chose to use all of its time examining its own witnesses, and Laguna's counsel chose to use most of its time in cross-examining them. Before Laguna called its first witness, the trial court explained that Sojourn had used its entire ninety minutes, while Laguna had twenty-six minutes remaining. Even then,

9

Sojourn responded that it was not asking for more time. It was only after each of Laguna's witnesses was excused that Sojourn objected that it was being denied the opportunity to cross-examine the witness in violation of its due-process rights.

We conclude that the trial court did not abuse its discretion in limiting the length of the hearing to the time requested and in enforcing the time limits that Sojourn expressly agreed to, thereby implicitly overruling Sojourn's subsequent due-process objections. *See Hartwell's Office World, Inc. v. Systex Corp.*, 598 S.W.2d 636, 640 (Tex. Civ. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.) (op. on reh'g) (holding that trial court did not deny the parties due process by limiting the time for a hearing on a temporary injunction to one hour where the parties tacitly acknowledged that they had no more witnesses).

## IV. CONCLUSION

Having overruled the issues presented, we affirm the trial court's order granting Laguna's application for temporary injunction and denying Sojourn's competing application.

/s/    Tracy Christopher
        Justice

Panel consists of Justices Christopher, Jamison, and McCally.