**Affirmed and Memorandum Opinion filed April 20, 2021.**



In The

# Fourteenth Court of Appeals

## NO. 14-20-00110-CV

**KENNETH D. SMARTT A/K/A KENNETH DAIR SMARTT, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 250th District Court
Travis County, Texas
Trial Court Cause No. D-1-GN-18-002098**

## M E M O R A N D U M   O P I N I O N

In this breach-of-contract action, appellant Kenneth Smartt a/k/a Kenneth Dair Smartt Jr., the guarantor of two tax-settlement agreements, challenges the summary judgment granted in favor of the plaintiff, the State of Texas.[1] Smartt

---

[1] The case is before this Court on transfer from the Third Court of Appeals in Austin pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001. Because this is a transfer case, we apply the precedent of the Third Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

maintains that he owes nothing because when the taxpayers breached the settlement agreements, the State wrote that it "cancelled" the contracts. According to Smartt, this language voided the settlement agreements, including his guarantees, while leaving in place the release of the taxpayers' debts. But, in stating that the agreements were "cancelled," the State merely informed Smartt that it was terminating its own future performance and resorting to its remedies for breach—including its right to collect the debts from Smartt. Thus, we affirm the trial court's judgment.

## I. BACKGROUND

Smartt's businesses Xoticas Laredo, L.P., and Xoticas Rio Grande Valley, L.P., were liable to the State of Texas for payment of sexually oriented business fees, penalties, and interest; we refer to these businesses as "the Taxpayers." Each Taxpayer entered into a settlement agreement with the Comptroller of Public Accounts of the State of Texas. Each agreement required the respective Taxpayer to make installment payments on the debt and remain current in all tax filings, failing which the full assessment, less any payments, would become immediately due, along with any additional penalties and interest. Smartt guaranteed the Taxpayers' performance and signed the agreements both as the limited partner in each Taxpayer and as the guarantor.

The Taxpayers breached the agreements, and Devin Bailey, the Manager of the Comptroller's Austin Enforcement Office, sent Smartt two letters, each concerning one of the two Taxpayers. The letters informed Smartt that, due to each Taxpayer's breach of its respective settlement agreement, "the agreement is now cancelled" and the entire tax liability was due.

Smartt did not pay the debts, and the State, acting through the Office of the Attorney General, sued him under the Tax Code and for breach of contract. Smartt

2

asserted the affirmative defenses of waiver, release, estoppel, and cancellation and rescission. In addition, he counterclaimed for specific performance of the settlement agreements.

The State filed a hybrid motion for traditional summary judgment on its own claims and for no-evidence summary judgment on Smartt's affirmative defenses.[2] The State's motion was supported by authenticated copies of the settlement agreements, the Comptroller's certification of the amount of taxes, penalties, and interest currently owed, as well the amount by which interest would continue to accrue each day, and evidence of attorney's fees. Smartt's response was supported only by copies of the settlement agreements and of the two letters from Bailey.

The trial court granted the State's motion, and after Smartt noticed the nonsuit of his counterclaim, the trial court rendered final judgment for the State in the amount of $1,513,418.58, plus interest, costs, and attorney's fees, and allowed Smartt's motion for new trial to be overruled by operation of law.

In a single issue, Smartt argues that the trial court erred in rendering summary judgment against him.

## II. STANDARD OF REVIEW

We review both traditional and no-evidence motions for summary judgment de novo. *See Boerjan v. Rodriguez*, 436 S.W.3d 307, 310 (Tex. 2014) (per curiam).

To prevail on a traditional motion for summary judgment, the movant must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211,

---

[2] Smartt also filed his own motion for partial summary judgment on an unpleaded claim for declaratory relief and for unspecified damages. He does not appeal the trial court's denial of his motion.

215–16 (Tex. 2003). If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018) (citing *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995)). We construe the evidence in the light most favorable to the non-movant by crediting evidence favorable to the nonmovant if a reasonable juror could and disregarding contrary evidence unless a reasonable juror could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

In a no-evidence motion for summary judgment, the movant asserts that there is no evidence of one or more essential elements of the claim or defense for which the nonmovant bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact as to the elements specified in the motion. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). We will affirm a no-evidence motion for summary judgment when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

### III. ANALYSIS

Nearly all of Smartt's arguments, both at trial and on appeal, are based on the same two premises. First, he asserts that the settlement agreements waived, released, or otherwise eradicated all tax liability and claims under the Texas Tax Code. Second, he maintains that Bailey's letters "cancelling" the settlement agreements canceled, waived, rescinded, or otherwise eliminated any contractual liability under

4

those agreements. Smartt therefore concludes that he does not owe the contested amounts to the State under the terms of the Tax Code or of the contracts. Both of these premises are mistaken.

## A.    The Settlement Agreements Did Not Eliminate Liability Under the Tax Code.

When construing a contract, our primary objective is to effectuate the written expression of the parties' intent. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 889 (Tex. 2019). To do so, we "consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless," bearing in mind that specific contract provisions control over general ones. *Id.* (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (emphasis omitted)). We may not "consider only the parts favoring one party and disregard the remainder." *Wilson,* 168 S.W.3d at 811.

When the parties entered into the settlement agreements in January 2016, the Taxpayers had outstanding liabilities arising from the failure to pay "sexually oriented business fees" during a particular time period. A "sexually oriented business fee" is a tax as defined by Title 2 of the Tax Code. *See* TEX. TAX. CODE ANN. § 101.003(13) ("'Tax' means a tax, fee, assessment, charge, or other amount that the comptroller is authorized to administer."); TEX. BUS. & COM. CODE ANN. § 102.052 (sexually oriented business fee of $5 per entry per customer to be recorded daily); TEX. BUS. & COM. CODE ANN. § 102.053 (sexually oriented business must remit the fees quarterly to the comptroller and file reports with the comptroller as the comptroller requires); TEX. BUS. & COM. CODE ANN. § 102.056 ("The provisions of Subtitle B, Title 2, Tax Code, apply to the administration, payment, collection, and enforcement of the [sexually oriented business fee]."); *Tex. Entm't Ass'n, Inc. v. Combs*, 431 S.W.3d 790, 799 (Tex. App.—Austin 2014, pet. denied) ("We conclude that the sexually-oriented-business tax is a general excise tax rather than an

occupation tax."). The tax liability for the period identified in each settlement agreement was identified as "the Contested Matter."

Under the subheading "General Terms," the settlement agreements state, "The Comptroller . . . releases and discharges Taxpayer, and Taxpayer's predecessors, successors, assignees, employees, agents, and attorneys from all known and unknown claims, suits, and causes of action related to the Contested Matter in issue." Under "Specific Terms," the parties stated,

> If the Taxpayer fails to remit the required payments, or if Taxpayer is not reporting its current taxes, the full assessment, less any payments, will immediately become due and payable with any additional penalties and accrued interest. No notice of default shall be required to be given to the Taxpayer.

Thus, the General Terms of the agreements released the Taxpayers' liability for the Contested Matters, and the Specific Terms unambiguously provided an exception to that release if the Taxpayers breached the agreements. The Specific Terms of each agreement further provided, "Guarantor Kenneth D. Smartt agrees to guarantee performance, including full payment of Taxpayer's obligation under this Agreement, contingent only upon Taxpayer defaulting on any provisions of this Agreement."

In sum, the Taxpayers' failure to perform as agreed had two contractual consequences. First, the taxes that were the subject of each Taxpayer's agreement were no longer to be treated by the State as released,[3] but instead became immediately due (reduced by any payments and increased by any additional penalties and accrued interest). Second, Smartt, as each Taxpayers' guarantor, became liable for those taxes.

---

[3] *Cf. Mustang Pipeline Co., Inc. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (per curiam) ("It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance.").

Smartt urges us to interpret the settlement agreements to give effect only to the "release" language of the contracts' General Terms while ignoring the Specific Terms altogether. But courts must enforce unambiguous contracts as written, giving effect to all of a contract's provisions so that none are rendered meaningless or superfluous. *In re Davenport*, 522 S.W.3d 452, 457 (Tex. 2017) (orig. proceeding). The agreements' plain language dictates the conclusion that, far from waiving, releasing, or canceling the Taxpayers' tax liability if they failed to pay as agreed, the agreements expanded the group who could be held liable for the taxes to include Smartt.

## B. Bailey's Letters Did Not Eliminate Smartt's Contractual Liability as Guarantor.

The other argument central to Smartt's appeal is his contention that Bailey's letters eliminated Smartt's contractual liability as the Taxpayers' guarantor. The two letters provided as follows, each differing only in its identification of the Taxpayer at issue and the amount of that Taxpayer's liability:

> On January 1, 2016 you entered into a payment agreement with this office for delinquent Sexually Oriented Business Tax. The terms of the agreement included timely payment of a monthly installment as well as the timely filing and payment of all subsequent reports due this office.
>
> Because of your failure to pay the subsequent reports, the agreement is now cancelled. The entire amount of the liability, $[xxxxxx] is now due in full. This amount includes tax, penalty, and interest through February 27, 2018.
>
> Please send your payment of $[xxxxxx] immediately to prevent further collection alternatives as provided by state law. . . .[4]

Smartt's argument that the letters eliminated his contractual liability rests entirely on a misunderstanding of the statement, "the agreement is now cancelled."

---

[4] Xoticas Laredo's stated liability was $529,234.20, and Xoticas Rio Grande Valley's stated liability was $919,472.58.

To understand the meaning of the word "cancelled" as used in Bailey's letters, one need only recall that when one party materially breaches a contract, the non-breaching party has a choice. *See Gen. Growth Props., Inc. v. Prop. Tax Mgmt., Inc.*, 614 S.W.3d 386, 393 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *Advanced Pers. Care, LLC v. Churchill*, 437 S.W.3d 41, 46 (Tex. App.—Houston [14th Dist.] 2014, no pet.). If the non-breaching party waives the breach and instead treats the parties' contractual obligations as continuing, then the non-breaching party must continue to abide by the contract's terms; its own non-performance will not be excused. *See Hanks v. GAB Bus. Servs., Inc.*, 644 S.W.2d 707, 708–09 (Tex. 1982). If the non-breaching party does not waive the breach, then its own performance is discharged. *See Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (per curiam).

By writing, "*Because of your failure to pay the subsequent reports*, the agreement is now cancelled,"[5] Bailey communicated that the State was not waiving the breach and instead considered its *own* contractual obligations terminated. *See Cancel*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "cancel" as "[t]o terminate a promise, obligation, or right" as in "the parties canceled the contract."); *see also Advanced Pers. Care*, 437 S.W.3d at 46 ("[U]pon the Buyer's breach of the Settlement Agreement, the Sellers had a choice. If they were to treat the contract as terminated, then the breach would excuse them from any further performance.").

No reasonable reading of Bailey's letter supports an inference that the State "cancelled" *Smartt's* liability. *Cf. Wilson*, 168 S.W.3d at 824 (in reviewing summary-judgment evidence, courts indulge "every *reasonable* inference" in the nonmovant's favor) (emphasis added). This is underscored by the words that

---

[5] Emphasis added.

immediately follow the word "cancelled": "The entire amount of the liability, $[xxxxxx] is now due in full." Further, the State could cancel its own further performance as a result of the Taxpayers' breach, but the settlement agreements did not give any party the right to cancel the contracts altogether, nor does Smartt contend otherwise. To the contrary, he acknowledges that the State "was not contractually permitted" to cancel the agreements.

We conclude that Bailey's letters are reasonably susceptible to only one interpretation: due to the Taxpayers' breach of the settlement agreements, the State considered the Taxpayers' entire tax liability, penalties, and interest immediately due and collectible from Smartt. Thus, the trial court properly rejected the contention that Bailey's letters canceled Smartt's contractual liability as the Taxpayers' guarantor.

## C.    Smartt's Remaining Arguments Similarly Lack Support.

Our rejection of Smartt's two central premises eliminates most of his remaining arguments. His remaining contentions are either unpreserved, unsupported by authority, or based on a misreading of another contract provision.

### 1.    *The State Proved the Amount Owed.*

Smartt argues that the State failed to prove the total amount owed because the State relied on a comptroller's certificate pursuant to Texas Tax Code section 111.013. The statute provides that "[i]n a suit involving the establishment or collection of a tax imposed under Title 2 or 3" of the Texas Tax Code, such a certificate is prima facie evidence of the stated amount of tax, penalties, interest, and delinquency, after all just and lawful offsets have been allowed. *See* TEX. TAX. CODE ANN. § 111.013. The certificate is presumed correct, and if unrebutted, establishes the amounts due as a matter of law. *See Kawaja v. State*, No. 03-05-00491-CV, 2006 WL 1559343, at *2 (Tex. App.—Austin June 8, 2006, no pet.) (mem. op.). The

presumption applies in a suit against a taxpayer's guarantor just as it does in a suit against the taxpayer. *See State v. Hunter*, No. 14-18-00678-CV, 2020 WL 4211241, at \*5 (Tex. App.—Houston [14th Dist.] July 23, 2020, no pet.) (mem. op.).

Smartt did not attempt to rebut the certificate; however, he asserts that the presumption does not apply because the suit against him was not "a suit involving the establishment or collection of a tax" inasmuch as the State "waived all tax claims." His arguments that the State waived all tax claims are the same arguments we have already rejected. Because the settlement agreements did not release the Taxpayers' tax liability if the Taxpayers breached the agreements, the State's claims under the Tax Code were not waived.

In the course of this argument, Smartt asserts that the State should be characterized as a private litigant in this suit. He reaches this conclusion by relying on cases that address conditions under which the State waives immunity from liability for certain offsetting claims. But, there are no offsetting claims; Smartt nonsuited his counterclaim for specific performance and attorney's fees. And the cases on which he relies concern conditions under which the State's sovereign immunity from others' claims is or is not waived.[6] Sovereign immunity is not at issue in this case, and the authorities Smartt cites have no bearing on the State's claims against Smartt or its ability to rely on the Comptroller's certificate.

Smartt also asserts that the certificate (a) is unreliable because it was not made near the time when the Taxpayers' tax liabilities first accrued, (b) contains unspecified inaccuracies, and (c) is inadmissible hearsay. Because the record does

---

[6] *See, e.g.*, *State ex rel. Best v. Harper*, 562 S.W.3d 1 (Tex. 2018); *State v. Elliott*, 212 S.W. 695 (Tex. App.—Galveston 1919, writ ref'd); *Tex. S. Univ. v. State St. Bank & Tr. Co.*, 212 S.W.3d 893 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (sub. op. on denial of reh'g).

not show that Smartt raised these objections in the trial court, they have not been preserved for review.

In his reply brief, Smartt argues for the first time that the certificate is conclusory. Complaints that evidence is conclusory may be raised for the first time on appeal. *Pipkin v. Kroger Tex. L.P.*, 383 S.W.3d 655, 670 (Tex. App.–Houston [14th Dist.] 2012, pet. denied). But, explained above, the legislature has declared that a Comptroller's certificate is prima facie evidence of the amount owed. Because Smartt produced no evidence to rebut the certificate, the certificate alone is sufficient proof of the amounts owed.

We overrule Smartt's evidentiary arguments.

### 2. *Smartt Failed to Raise a Fact Issue on His Affirmative Defenses of Waiver, Release, and Rescission and Cancellation.*

In the no-evidence portion of the State's motion for summary judgment, the State argued there was no evidence to support certain elements of Smartt's affirmative defenses of waiver, release, and rescission and cancellation. Regarding waiver, the State asserted there was no evidence of the Comptroller's express renunciation of a known right or its silence or inaction for a length of time that showed an intention to yield the known right.[7] Regarding release, the State averred that Smartt had no evidence that the Comptroller had surrendered its legal rights

---

[7] The elements of waiver are (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right. *Shannon v. Mem'l Drive Presbyterian Church U.S.*, 476 S.W.3d 612, 627 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). To determine if a party has waived a right, we "examine the acts, words, or conduct of the parties, and it must be 'unequivocally manifested' that it is the intent of the party to no longer assert the right." *Rodriguez v. Villarreal*, 314 S.W.3d 636, 645 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (quoting *Dep't of Protective & Regulatory Servs. v. Schutz*, 101 S.W.3d 512, 516 (Tex. App.—Houston [1st Dist.] 2002, no pet.)).

11

under the settlement agreements.[8] As for rescission and cancellation, the State maintained there was no evidence that (a) the Comptroller fraudulently induced Smartt to enter into the settlement agreements, or (b) Smartt and the Comptroller arrived at a mutual understanding that the Agreement was abrogated and terminated.[9]

In response, Smartt relied only on his mistaken interpretation both of the settlement agreements' terms and of the language in Bailey's letters. For the reasons previously explained, neither the settlement agreements nor Bailey's letters waived, released, rescinded, or canceled the State's claims against Smartt. We therefore conclude that Smartt failed to raise a genuine issue of material fact on these affirmative defenses.

### 3.       *The State Did Not Limit Its Remedies for Breach of the Agreements.*

In Smartt's remaining argument, he asserts that the State's sole remedy under the settlement agreements was to sue for specific performance. The agreements actually say that the "Comptroller *reserves* the right to sue for specific performance of this Agreement";[10] the agreements do not say that any other remedies are unavailable or restricted, or that a suit for specific performance is the State's exclusive remedy for breach of contract. Moreover, "[i]t is well-settled that upon breach of contract, a party may pursue any remedy which the law affords in addition to the remedy provided in the contract." *Blackstone Med., Inc. v. Phoenix Surgicals,*

---

[8] "[A] release surrenders legal rights or obligations between the parties to an agreement." *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993).

[9] *See Guliver v. Shafer*, No. 14-07-00217-CV, 2008 WL 123872, at *5 (Tex. App.— Houston [14th Dist.] Jan. 15, 2008, no pet.) (mem. op.) (contract may be rescinded if it was fraudulently induced or "if the parties arrive at a mutual understanding that the contract is abrogated and terminated").

[10] Emphasis added.

*L.L.C.*, 470 S.W.3d 636, 653 (Tex. App.—Dallas 2015, no pet.). Thus, this argument, too, is without merit.

We overrule the sole issue presented.

## IV. CONCLUSION

Having considered and rejected each of Smartt's arguments, we affirm the trial court's judgment.


/s/     Tracy Christopher
        Chief Justice


Panel consists of Chief Justice Christopher and Justices Jewell and Poissant.