

# NUMBER 13-23-00341-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

DAVID DREW JR.,                                                    Appellant

v.

ARLETTE DOMINGUEZ GALLEGOS BELVER;
FAV SWIMMERS, LLC, D/B/A
AQUA TOTS SWIM SCHOOL; AND
FAV SWIMMERS II, LLC,                                         Appellees.

## ON APPEAL FROM THE 166TH DISTRICT COURT
## OF BEXAR COUNTY, TEXAS

## MEMORANDUM OPINION

Before Justices Silva, Peña, and Cron
Memorandum Opinion by Justice Silva

Appellant David Drew Jr. filed a lawsuit against his former wife and business partner, Arlette Dominguez Gallegos Belver, as well as FAV Swimmers, LLC (FAV1) and Fav Swimmers II, LLC (FAV2) (collectively, appellees). FAV1 and FAV2 do business as Aqua Tots Swim School and operate separate locations in San Antonio. After a bench trial, the court signed a judgment in favor of Drew for two reimbursement claims of $23,934 and $1,015, totaling $24,949, and post-judgment interest on the total amount. It also rendered a "take nothing" judgment on Drew's remaining claims. The trial court subsequently entered findings of fact and conclusions of law. In twenty-four issues, which we reorganize, Drew argues that the trial court committed numerous errors in its findings of facts and conclusions of law resulting in an improper verdict, erroneously admitted evidence of bad acts during trial, and that the cumulative errors by the trial court warrant reversal and remand for a new trial. We affirm in part and reverse and render in part.

## I.     BACKGROUND[1]

In his live pleading, Drew raised numerous causes of action against appellees, including (1) breach of contract, (2) breach of divorce decree, (3) promissory estoppel, (4) breach of fiduciary duty and constructive fraud, (5) violations of the Texas Business Organizations Code, (6) common law fraud, fraudulent non-disclosure, and fraudulent inducement, (7) fraud by affirmative misrepresentation and negligent misrepresentation,

---

[1] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer). Because this is a transfer case, we apply the precedent of the San Antonio Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.

(8) alter ego and piercing the corporate veil, (9) reverse piercing the corporate veil, (10) constructive trust, (11) negligence, (12) gross negligence, and (13) civil conspiracy and aiding and abetting. The petition also noted the following:

> [Drew] sues [appellees] for the following actual damages, expenses, and costs:
>
> a. Any and all distributions and profits owed to [Drew] from [FAV2] from 2014[–]2[01]7;
>
> b. Reimbursement and/or indemnification for past due income taxes owed by [appellees] which have been paid by [Drew], including through withholding of his income tax refunds;
>
> c. Reimbursement and/or indemnification for past due income and self-employment (Social Security and Medicare) taxes owed by [appellees] which have been paid by [Drew], including through withholding of his income tax refunds;
>
> d. Reimbursement and/or indemnification for any Internal Revenue Service penalties and/or interest owed by [appellees] which have been paid by [Drew] for their past due income and self-employment taxes;
>
> e. Disgorgement and equitable forfeiture of all fees, improper financial payments and benefits, distributions, profits, salary, and any other remuneration received by [Belver] or derived from her improper acts and breaches of fiduciary duties;
>
> f. Reimbursement for all money for which [appellees] have been unjustly enriched;
>
> g. Any remaining balance and/or interest owed on the Promissory Note;
>
> h. Expenses and fees paid to accountants;
>
> i. All costs and litigation expenses for depositions and court costs; and
>
> j. Reasonable and necessary attorney's fees.

The petition also sought punitive damages or exemplary damages. The case proceeded to a bench trial on January 11, 2023, where the following evidence was adduced.

3

On October 22, 2014, Drew and Belver entered into a partnership agreement regarding FAV2, which defined the rights and duties of members and managers. Managers were vested with "full, exclusive, and complete discretion in the management and control of, and in the making of all decisions affecting" FAV2. In particular, the agreement held that "[d]istributions of [a]vailable [c]ash and other property resulting from [FAV2] operations shall be made by the [m]anagers from time to time to the [m]embers in accordance with their respective [p]ercentage [i]nterests." The agreement also provided that "[m]anagers shall receive such compensation for their services as may be designated from time to time by the [m]anagers and approved by a [m]ajority in [i]nterest of the [m]embers. In addition, the [m]anagers shall be entitled to be reimbursed for out-of-pocket costs and expenses incurred in the course of their service." Drew and Belver were defined as "members" in the agreement. However, Belver retained an 81% interest in consideration of her $510,000 capital contribution and labor to FAV2. Drew retained a 19% interest in consideration of his $120,000 capital contribution to FAV2. The agreement also named Belver as the sole manager of FAV2. Additionally, Belver was the sole owner and manager of FAV1.

Drew and Belver married in June 2016 but separated in February 2017. Belver testified that in February 2017, Drew, Belver, and her youngest daughter visited Puerto Vallarta, Mexico. According to Belver, he "got extremely drunk, extremely wasted, very aggressive and physically attacked [her]." Belver testified that she did not receive medical treatment for any injuries nor file a police report. Belver subsequently filed for divorce on May 11, 2017, and an agreed divorce decree was signed and entered on July 11, 2017.

4

The divorce decree was admitted into evidence and contained the following provisions:

> IT IS ORDERED AND DECREED that [Belver] shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold [Drew] and his property harmless from any failure to so discharge, these items:
>
> . . . .
>
>> W-3. All liabilities, encumbrances, ad valorem taxes, liens, assessments, or other charges due or to become due on the personal property awarded to [Belver] in this decree unless express provision is made in this decree to the contrary.
>>
>> W-4. That certain $120,000.00 Promissory Note executed by [Belver] in favor of [Drew], and being secured by a Security Agreement covering [Drew's] previous membership interest in [FAV2].

The divorce decree also contained what we refer to in this memorandum opinion as a tax-indemnification provision:

> IT IS ORDERED AND DECREED that, for calendar year 2016, each party shall timely pay and indemnify and hold the other party and his or her property harmless from any federal income tax liability attributable to the personal earnings of the reporting party and any net income resulting from property subject to the sole management and control of the reporting party from January 1 of that year through the date of divorce and for all such postdivorce earnings and income.

The divorce decree did not provide specific instructions regarding the manner in which Drew and Belver were to file their tax return for 2016. However, the divorce decree also contained a separately labeled section of indemnification provisions, which we refer to as the general indemnification provisions:

> *Indemnification*
>
> Each party represents and warrants that he or she has not incurred any outstanding debt, obligation, or other liability on which the other party is or may be liable, other than those described in this decree. Each party agrees and IT IS ORDERED that if any claim, action, or proceeding is hereafter initiated seeking to hold the party not assuming a debt, an

5

obligation, a liability, an act, or an omission of the other party liable for such debt, obligation, liability, act, or omission of the other party, that other party will, at his or her sole expense, defend the party not assuming the debt, obligation, liability, act, or omission of the other party against any such claim or demand, whether or not well founded, and will indemnify the party not assuming the debt, obligation, liability, act, or omission of the other party and hold him or her harmless from all damages resulting from the claim or demand.

Damages, as used in this provision, includes any reasonable loss, cost, expense, penalty, and other damage, including without limitation attorney's fees and other costs and expenses reasonably and necessarily incurred in enforcing this indemnity.

IT IS ORDERED that the indemnifying party will reimburse the indemnified party, on demand, for any payment made by the indemnified party at any time after the entry of the divorce decree to satisfy any judgment of any court of competent jurisdiction or in accordance with a bona fide compromise or settlement of claims, demands, or actions for any damages to which this indemnity relates.

The parties agree and IT IS ORDERED that each party will give the other party prompt written notice of any litigation threatened or instituted against either party that might constitute the basis of a claim for indemnity under this decree.

On August 22, 2017, Drew and Belver filed a joint tax return for 2016, which was prepared and submitted to the Internal Revenue Service (IRS) by Belver's accountants. The 2016 tax return was admitted into evidence and included a Form 1040. Under the "Filing Status" section of Form 1040, a box containing the "Married filing jointly (even if only one had income)" option was check-marked. Under the "Income" section, "102,016" was entered as "[w]ages, salaries, tips, etc."; "762" was entered as taxable interest; "176,263" was entered as "[b]usiness income"; "-3,000" was entered as "[c]apital . . . loss"; "697" was entered as "[r]ental real estate, royalties, partnerships, S corporations, trusts, etc."; "276,738" was entered as "total income"; and "273,355" entered as "adjusted

6

gross income." Under the "Other Taxes" section, "52,678" was entered as "total tax." Under the "Payments" section, "19,474" was entered both as "[f]ederal income tax withheld" and "total payments." Under the "Amount You Owe" section, "33,531" was entered as "[a]mount you owe." A Schedule C form for reporting business profits or losses was attached to the 2016 joint tax return. Drew's name was entered in the blank box for "[n]ame of proprietor." FAV1 was entered in the blank box for "[b]usiness name." "176,263" was entered as a "[n]et profit" for FAV1. A Schedule SE form reporting self-employment taxes was also attached to the 2016 joint tax return, which listed Drew's name as well.

As part of their 2016 joint tax return, Drew and Belver submitted a Form 8879 for "IRS *e-file* Signature Authorization." Drew's name was entered in the blank box for "[t]axpayer's [n]ame," and Belver's name was entered in the blank box for "[s]pouse's [n]ame." Part I of Form 8879 included tax return information matching entries in Form 1040 mentioned above for adjusted gross income, total tax, refund, and amount owed. Part I of Form 8879 contained the entry "33,531" in the blank box for "Amount you owe." Part II of Form 8879 included a declaration and signature authorization which stated in pertinent part the following:

> Under penalties of perjury, I declare that I have examined a copy of my electronic individual income tax return and accompanying schedules and statements for the tax year ending December 31, 2016, and to the best of my knowledge and belief, it is true, correct, and accurately lists all amounts and sources of income I received during the tax year. *I further declare that the amounts in Part I above are the amounts from my electronic income tax return*. I consent to allow my intermediate service provider, transmitter, or electronic return originator (ERO) to send my return to the IRS. . . . I further acknowledge that the personal Identification number (PIN) below is my signature for my electronic income tax return and, if applicable, my

7

Electronic Funds Withdrawal Consent.

(Emphasis added). In that same section, Drew and Belver each provided their hand-written signature authorizing Capital Accounts to "enter or generate my PIN as my signature on my tax year 2016 electronically filed income tax return." Drew and Belver also provided a hand-written date of August 22, 2017.

On October 4, 2019, Drew filed suit against Belver for breach of contract related to the late payments of the promissory note, as well as Belver's failure to pay money owed to him pursuant to the partnership agreement for FAV2. On October 21 and 28, 2019, Drew received notices from the IRS informing him that his $7,930 tax refund for 2017 and his $11,354 tax refund for 2018 had been applied to taxes owed for 2016. Drew admitted he did not reach out to Belver nor the accountants when he received these notices. Drew subsequently entered into an installment agreement with the IRS for the remaining taxes owed for 2016 "[b]ecause [the] IRS was holding [him] responsible for them." Drew testified that if he did not pay or enter an installment agreement, the IRS would put a lien on his accounts or property. According to Drew, he had paid the IRS approximately "23 or $24,000" for Belver's tax debt. When asked if Belver had reimbursed him for "any of the $24,000 [he] had to pay the IRS for her 2016 taxes," Drew responded, "No." When asked if he would have agreed to the divorce settlement if he knew he was going to have to pay $30,000 to $40,000 in taxes on Belver's behalf, Drew responded, "No." Drew amended his original petition and included in the live pleading a breach of divorce decree claim regarding the taxes he paid for 2016.

A draft of the 2016 joint tax return was admitted into evidence. This draft was not

8

filed with the IRS. However, the draft listed Belver's name in the Schedule C and Schedule SE forms. Both Drew and Belver testified that entry of Drew's name on the filed Schedule C form for 2016 was erroneous and should have listed Belver's name as she was the sole owner for FAV1 and Drew owned no interest in FAV1. Belver testified that the mistake was made by the accountant, and that neither she nor Drew identified the error when reviewing the tax return.[2] According to Belver, the W-2s attached to the 2016 joint tax return were for Drew's income of $102,000. Both Drew and Belver also testified that entry of Drew's name on the filed Schedule SE form for 2016 was erroneous and that the form should have listed Belver's name. Belver testified that she did not instruct her accountant to list Drew's name in the Schedule C and Schedule SE forms for 2016. In regard to the "176,263" entered as "[b]usiness income" in the 2016 joint tax return, Belver testified that Drew never received income from FAV1. When asked if she "agree[d] that the person who would have received the income from [FAV1] in the amount of 176,000 for 2016 would have been you," Belver responded, "Correct." Belver also affirmed that the self-employment tax should have been attributable to her.

Belver testified that she instructed her accountant to request an extension with the IRS to file her 2016 tax return, as well as prepare the return as a single filer. Belver stated that Drew asked her to file jointly, and that her accountant advised the same. According to Belver, she and Drew had discussions before the joint tax return was finalized and that Drew agreed to pay her tax liability because he was thankful that she never reported him

---

[2] "Schedule C" forms filed to the IRS for tax years 2014, 2015, and 2017 were also admitted into evidence and had Belver's name listed as the owner of FAV1.

9

to the authorities in Mexico for the assault. Belver also stated that Drew asked her to contribute to the amount owed, that she gave Drew a $2,000 check, and that she understood that Drew was to pay the remaining balance. Belver admitted that this agreement was not in writing, and that she had raised a counterclaim regarding this agreement but dropped it under the advice of counsel. In contrast, Drew testified that there was no agreement between him and Belver by which he would pay all of Belver's taxes. According to Drew, the $2,000 check he received from Belver was to compensate him for the amount he would have received from the IRS had he filed single. Drew testified that he agreed to file a joint tax return to benefit Belver and himself. Drew further testified that the incident in Mexico did not happen.

A Schedule K-1 form for tax year 2017 listed Drew as a partner for FAV2. Under the "Partner's Share of Current Year Income, Deductions, Credits and Other Items" section, "8,349" was entered in the box labeled "Ordinary business income (loss)." In the same section, "80,000" was entered in the box labeled "Distributions." Drew testified that he did not receive $8,349 from FAV2. An amended Schedule K-1 form for tax year 2017 contained "8,349" entered in the box labeled "Ordinary business income (loss)," and it did not contain any entry in the box labeled "Distributions."

Drew testified that he was never paid distributions or profits for FAV2. Belver likewise testified that no distributions were made during the time Drew owned an interest in FAV2. According to Drew, Belver told him that FAV2 always had a loss and never made a profit. Several financial reports regarding FAV2's operations during 2015, 2016, and 2017 were admitted into evidence. These ledgers contained outflows of various sums of

money at various dates, which were labeled as "[d]istributions." However, Belver testified these transactions were not distributions but compensation paid to her for managing the business. According to Belver, her businesses were required to abide by the franchisor's list of general ledger accounts, which had no account name called "compensation." Belver testified that compensation was placed "[u]nder account distributions" in the general ledger, and that this was the same for each of the businesses. Belver further testified that a decision to declare a distribution was "[b]ased on cash flow of the business." Belver also indicated that there was not a need of a specific number regarding cash flow for her to declare a distribution. In addition, Belver admitted that there were transfers of money between FAV1 and FAV2 in the financial reports but denied she commingled funds between the two entities.

Austin Galvez, a certified public accountant, testified that "[i]ncome refers to the amount of money a business made on paper for a set period of time" and "distributions refers to cash that has left the company and been pas[sed] along to an investor." Galvez stated that only owners pay taxes on income for an LLC. When asked if "managing members receive W-2s or 1099s," Galvez responded, "No, they do not." According to Galvez, they receive "a K-1 that summarizes their share of the earnings." When asked if the $8,439 referenced in the amended Schedule K-1 form for 2017 represented "money placed in []Drew's pocket," Galvez responded, "No." Galvez indicated that the $8,439 "represents [Drew's] share of the paper income for the business based on its operations in 2017," which was different than a distribution. Galvez also affirmed that the amended Schedule K-1 form included a separate block for entering distributions, and that none

11

were listed. Regarding Form 8879, Galvez testified that Drew and Belver's signature on that form indicated that "[they] signed off on the contents of that return to be e-filed by their accountant to the IRS" and that "they assumed responsibility for the contents of that return." In his report, Galvez stated:

1. [Drew's] petition claims that [he] was wrongly assessed income tax on his 2016 tax return. Couples who wish to maintain their tax liabilities separately should file as "Married Filing Separately" on the tax return[]. However, the 2016 income tax return filed by []Drew was filed as "Married Filing Jointly" with []Belver[]. This action caused the tax liability of []Drew and []Belver to be combined[]. This means that the income or earnings of one spouse is attributed to the other.

. . . .

5. Throughout [Drew's] petition, there is repeated mention of income, profits, and distributions. These terms appear to be used interchangeably. Income and profits are generally synonymous with each other and refer to the revenues less expenses of a business. Income can also be a loss when expenses exceed revenue. Distributions refer to withdrawals of cash or property from the business to an owner. The IRS taxes an owner's share of income/profit reported on the federal K-1 at the end of a year—distributions are merely disclosed to the IRS and rarely trigger a tax. If there is a loss, the reported total can offset other sources of income for the year.

   The presence of income (or, profit) at the end of the year does not guarantee that funds are available for distribution, as the cash flow from a business's income is often reinvested back into the business. The profits present at the end of the year belong to the business, and distribution of those profits is at the discretion of management. There is no guarantee that annual profits will always be disbursed. This concept can confuse owners since the reinvested funds do not reduce business profits but instead remain in the business to sustain and grow operations.

6. [Drew's] petition alleges that [FAV2] was required to distribute profits to [] Drew from 2014 to 2017 and also alleges that he is owed all accrued profits during those years. This is incorrect. As explained above, profits and distributions have different meanings.

Per the [FAV2] partnership agreement, the manager [Belver] is allowed to make distributions from time to time. There is no set timeframe based on the partnership agreement to make distributions.

Total income in [FAV2] from 2014 to 2017 was $20,793 ($0 in 2014[], -$69,205[] in 2015, $8,363[] in 2016, and $81,635[] in 2017). The share of income allocated to [] Drew based on K-1s from [FAV2] was -$4,581 (-$13,062[] in 2015, $132[] in 2016, $8,349[] in 2017). If potential distributions were to be made based on income, [] Drew did not receive enough income to merit a distribution.

Galvez also testified that "the K-1s did show some distributions." Galvez suggested that Drew should have gotten some of the distributions based on his percentage of ownership if such distributions were made, and that it would have been a breach of fiduciary duty if he did not receive such distributions.

On April 18, 2023, the trial court entered a judgment and awarded Drew $23,934 "for a REIMBURSEMENT CLAIM on federal income taxes that . . . DREW . . . paid toward a 2016 jointly filed federal income tax return," $1,015 "for a REIMBURSEMENT CLAIM for fees that . . . DREW . . . paid to accountants regarding the . . . 2016 jointly filed federal income tax return," and post-judgment interest at a rate of 7.75%. The court also ordered that Drew take nothing on all his other causes of actions and claims.[3] The court ordered that Drew and Belver pay their own attorney's fees.

On June 5, 2023, the trial court entered its fifty-eight-page findings of fact and conclusions of law. This appeal followed.

---

[3] The judgment expressly ordered that Drew take nothing on thirty-four listed causes of action and claims.

## II.  STANDARD OF REVIEW AND APPLICABLE LAW

Drew raises numerous issues regarding aspects of the trial court's judgment as well as its findings of facts and conclusions of law.

"In an appeal from a bench trial, the trial court's findings of fact have the same force and effect as jury findings." *SCS Builders, Inc. v. Searcy*, 390 S.W.3d 534, 539 (Tex. App.—Eastland 2012, no pet.) (cleaned up); *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 147 (Tex. App.—Dallas 2012, no pet.). "[W]hen a party challenges the trial court's findings of fact, . . . we review those findings by the same standards we use in reviewing the sufficiency of the evidence supporting a jury's answers." *Garcia v. Tautenhahn*, 314 S.W.3d 541, 544 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.) (cleaned up). "If there is any evidence of a probative nature to support the trial court's judgment, we will not set it aside, and we may not substitute our findings of fact for those of the trial court." *Id*. "Unchallenged findings of fact are binding on the appellate court, unless the contrary is established as a matter of law or there is no evidence to support the finding." *Sharifi*, 370 S.W.3d at 147. "When . . . the appellate record contains a reporter's record, findings of fact on disputed issues are not conclusive and may be challenged for sufficiency of the evidence." *Id.*

If a party with the burden of proof challenges the legal sufficiency of an adverse finding, we must determine whether the complaining party has demonstrated on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *See Barnes v. Mathis*, 353 S.W.3d 760, 762 (Tex. 2011). In a "matter of law" challenge, we "first examine the record for evidence that supports the finding, while ignoring all

14

evidence to the contrary." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). If there is no evidence to support the finding, we will examine the entire record in order to determine whether the contrary proposition is established as a matter of law. *Id.* We will sustain the issue if the contrary proposition is conclusively established. *Id.* The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

When a party attacks the factual sufficiency of an adverse finding on an issue on which he has the burden of proof, he must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.*, 46 S.W.3d at 242. The court of appeals must consider and weigh all of the evidence and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.* Under either standard, we must defer to the trial court's factual determinations of witness credibility and demeanor. *See City of Keller*, 168 S.W.3d at 827.

Texas Rule of Civil Procedure 299 states the following concerning the import and review of findings of facts:

> When findings of fact are sent by the trial court they must form the basis of the judgment upon all grounds of recovery and of defense embraced therein. The judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact; but when one or more elements thereof have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment.

TEX. R. CIV. P. 299. "[Rule 299] plainly states that findings of fact 'shall form the basis of

15

the judgment,'" "[but t]his does not mean that the trial court must make a finding as to every element of a cause of action." *Dessens v. Argeroplos*, 658 S.W.3d 438, 444 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (citing TEX. R. CIV. P. 299); *see Nicholas v. Envtl. Sys. (Int'l) Ltd.*, 499 S.W.3d 888, 894–95 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("The trial court is not required to set out in detail every reason or theory by which it arrived at its final conclusions."). "So long as the trial court makes a finding as to at least one element of a cause of action," appellate courts "may presume the trial court made implied findings as to the remaining elements." *Dessens*, 658 S.W.3d at 444*; see Clinton v. Gallup*, 621 S.W.3d 848, 850 (Tex. App.—Houston [14th Dist.] 2021, no pet.). "If, however, the trial court omits findings as to *all* elements of a cause of action, [appellate courts] may not imply findings as to that cause of action." *Clinton*, 621 S.W.3d at 850. Express findings made by the trial court "cannot be extended by implication to cover further independent issuable facts." *Jones v. Smith,* 291 S.W.3d 549, 554 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Furthermore, "we will not presume findings when 'the record reveals that the trial court based its judgment on an erroneous interpretation of law, and failed to answer a factual question necessary to resolve the case under a correct interpretation.'" *Clinton*, 621 S.W.3d at 852 (quoting *Advanced Pers. Care, LLC v. Churchill*, 437 S.W.3d 41, 47 (Tex. App.—Houston [14th Dist.] 2014, no pet.)). "When the trial court does not make findings that would control the case under a correct legal interpretation, and the proper findings cannot be presumed, the proper disposition is to reverse the judgment and remand the case for further proceedings." *Id.* at 852 (first citing *Churchill*, 437 S.W.3d at 49; and then citing *Jones*, 291 S.W.3d at 555 (reversing and

16

remanding when trial court "made findings of fact and conclusions of law relevant to an erroneous interpretation of law [precluding presumed findings under Rule 299], and did not make findings that would control the case under a correct legal interpretation")); *see also Nguyen v. Nguyen*, 355 S.W.3d 82, 92–93 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (citing *Jones* and reversing and remanding when trial court's express findings on one theory of informal marriage could not be extended by implication to cover independent issuable facts regarding second theory of informal marriage); *Nautilus Ins. Co. v. Steinberg*, 316 S.W.3d 752, 758 (Tex. App.—Dallas 2010, pet. denied) (citing *Jones* and reversing and remanding when trial court "did not make a finding on the element of intent that would control the case under the correct construction of the policy and interpretation of the law" and that finding could not be presumed).

We review a trial court's conclusions of law de novo. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). "We are not bound by the trial court's legal conclusions, but the conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence." *Sheetz v. Slaughter*, 503 S.W.3d 495, 502 (Tex. App.—Dallas 2016, no pet.) (cleaned up). "Incorrect conclusions of law will not require reversal if the controlling findings of fact will support a correct legal theory." *Id.* "Moreover, conclusions of law may not be reversed unless they are erroneous as a matter of law." *Id.*

### III.     RES JUDICATA

We first address Drew's fourteenth issue, by which he argues that the trial court erred in its conclusion that res judicata "applied to every cause of action and legal

17

doctrine."

"The party asserting the defense of res judicata has the burden of proving each element of the defense." *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 706 (Tex. 2021). "Res judicata, or claims preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, *with the use of diligence*, should have been litigated in the prior suit." *City of San Antonio v. Cortes*, 468 S.W.3d 580, 585 (Tex. App.—San Antonio 2015, no pet.) (emphasis added) (quoting *Barr v. Resol. Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992)). Res judicata requires proof of: "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action." *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007).

Drew contends that the trial court failed "to consider and determine if [he] could have discovered the causes of action listed in Conclusion of Law No. 7 by exercising diligence."[4] We disagree. In conclusion of law number 7, the trial court expressed that res judicata applied to the following claims: "Those claims, issues, and/or causes that are the same subject matter as that in the divorce litigation of Cause Number 2017-CI-08685 and/or

that arose during the pre-divorce period of time"; "Breach of contract on [partnership agreement] of FAV[2], dated October 22, 2014"; "Promissory estoppel";

---

[4] In connection to its findings regarding res judicata, the trial court also found that appellees FAV1 and FAV2 were in privity with Belver during their divorce proceeding. Drew does not contest this finding and we express no opinion as to its correctness.

"Promissory estoppel regarding [the partnership agreement] of FAV[2] dated October 22, 2014"; "Breach of fiduciary duty as a business partner"; "Breach of fiduciary duty as a spouse"; "Unjust enrichment"; "Money had and received"; "Violations of the Texas Business Organizations Code"; "Fraud"; "Constructive fraud"; "Common law fraud"; "Fraudulent non-disclosure"; "Fraudulent inducement"; "Fraud by affirmative misrepresentation"; "Negligent misrepresentation"; "Alter ego"; "Piercing the corporate veil"; "Reverse piercing the corporate veil"; "Misappropriation"; "Constructive trust"; "Negligence"; "Negligence under Restatement (SECOND) of Torts § 552"; "Gross negligence"; "Civil Conspiracy"; "Aiding and abetting"; "Disgorgement"; "Mental anguish"; and "Exemplary damages."

We note that this conclusion of law did not list Drew's breach of divorce decree claim.[5] Relevant to this conclusion was the trial court's finding that, "Prior to or during the litigation of his divorce from [Belver] in Cause Number 2017-Cl-08685, [Drew] could have litigated with the exercise of diligence all of his claims that arose pre-divorce but chose not to so litigate." The finding then provided a list of "pre-divorce claims" that the trial court found "were litigated or could have been litigated with the exercise of diligence regard[ing] profits, distributions, [and] fiduciary duty." The list of "pre-divorce claims" in this finding is identical to the list of "claims/issues/ and/or causes of action" in the trial court's conclusion of law number 7. Drew does not challenge this finding.

However, Drew argues that he "did not discover the records showing distributions

---

[5] In this issue, Drew points to evidence showing that his breach of divorce decree claim was not "ripe" at the time the divorce decree was entered. However, as noted above, the trial court did not conclude that Drew's breach of divorce decree claim was barred by res judicata.

19

had indeed been paid until long after this lawsuit was filed" and that Belver "admitted it was a breach of the [partnership agreement] paying herself a distribution and not paying Drew his nineteen percent." We construe this argument as a sufficiency challenge to the trial court's finding that Drew could have litigated a claim for breach of contract on the partnership agreement. Regarding this claim, Drew alleged that he never received his portion of distributions issued by FAV2 from Belver during the time period in which he owned an interest in FAV2, in breach of the partnership agreement. The trial court issued the following relevant findings of fact:

> 74. During the time that [FAV2] operated Aqua Tots swim school while [Drew] was a member of [FAV2]—[Drew] received near-monthly e-mails regarding written reports about the financial condition and finances of FAV2. These e-mails were sent either by [Belver] or her bookkeeper, Ms. Sonia Tapia. Generally. these e-mails included attachments containing the following information:
>
> > a. Monthly Revenue Reconciliation Report;
> >
> > b. Profit and Loss Report;
> >
> > c. Balance Sheet Report; and
> >
> > d. Monthly Bank Statements.
>
> . . . .
>
> 77. [Drew] was afforded regular and complete access to the financial records and books of [FAV2]. [Drew] also was allowed to ask questions about those financial records and, at times, did ask questions and receive answers about same.

Drew does not challenge these findings. During trial, the financial reports that Belver emailed to Drew were admitted into evidence and served as the evidentiary basis for Drew's claim of breach of contract of the partnership agreement as they contained some

transactions labelled as distributions. During Drew's testimony, the following exchange occurred:

> [Belver's counsel]: Sir, I'm showing you Defendant's Exhibit 1. I'll let you review it first before I ask some questions.
>
> [Drew]: Okay.
>
> [Belver's counsel]: You do recognize that these were e-mails sent to you with monthly financial reports from FAV[2], correct?
>
> [Drew]: Correct.
>
> . . . .
>
> [Belver's counsel]: [W]hen you got these reports, you didn't really look at them, right, you just kind of glanced at them?
>
> [Drew]: Well, like in this one, this example that you pointed out, I looked through there. I pointed out a few things that caught my eye and I asked about it.
>
> [Belver's counsel]: Sir, you do have a deposition on file, you know that, right?
>
> [Drew]: Yes.
>
> [Belver's counsel]: And you recall what you told me in your deposition, correct?
>
> [Drew]: Yes.
>
> [Belver's counsel]: Wasn't it that you were basically just kind of glancing and you didn't pay close attention to them?
>
> [Drew]: Mostly, yes.
>
> [Belver's counsel]: Mr. Drew, when your divorce proceedings

21

|                      | arrived, you did not avail yourself at that time to litigate any financial issues regarding FAV[2], did you? |
| -------------------- | --------------------------------------------------------------------------------------------------------------- |
| [Drew]:              | No. |
| [Belver's counsel]:  | You did not go and obtain an accountant to look at all the reports that you had only glanced at the 3 prior years, correct? |
| [Drew]:              | Correct. |
| [Belver's counsel]:  | You did not go get a lawyer and say, I must go ahead and ensure that no fraud had been put against me, didn't you? |
| [Drew]:              | Correct. |
| [Belver's counsel]:  | The bottom line is, you had an opportunity to litigate all of that during your divorce proceeding and you just did not, correct? |
| [Drew]:              | I didn't know. That's correct. |
| [Belver's counsel]:  | So you did not litigate it. You had that opportunity, but did not litigate it, correct? |
| [Drew]:              | Correct. Actually, may I change my answer? |
| [Belver's counsel]:  | Yes, sir. |
| [Drew]:              | Not correct cause I did not have the opportunity. I did not know about it. |

Drew's testimony demonstrates that he had access to the reports during the time in which he owned an interest in FAV2. Therefore, we conclude the trial court's finding that Drew could have litigated his breach of partnership agreement claim with the exercise of diligence in the prior proceeding is supported by legally and factually sufficient evidence. *See Dow Chem. Co.*, 46 S.W.3d at 242. As no other aspects of the trial court's finding is

22

challenged, we further conclude that said finding supports the trial court's conclusion that res judicata applied to Drew's "pre-divorce" claims. Thus, we hold the trial court did not err in issuing this conclusion of law. *See BMC Software Belg., N.V.*, 83 S.W.3d at 794. Drew's fourteenth issue is overruled.[6]

## IV.   COLLATERAL ATTACK

In his fifteenth issue, Drew argues the trial court erred in concluding that all of his claims were a collateral attack on the divorce decree. Specifically, Drew challenges the trial court's conclusions of law numbers 13 and 14. In conclusion of law number 13, the trial court expressed the following:

> 13. As to [Drew's] claims regarding profits, losses, and distributions; his claims that have the effect of seeking property from [appellees] in contravention to the ownership and property division awarded in the [divorce decree]; his re-characterization, as he applied it in this case, of what a reporting party is under the [divorce decree]; his assertion that there is no ambiguity requiring clarification in said [divorce decree]; and his variant claims of false, material representations and related claims of variant forms of fraud—all said claims have the effect of contradicting and/or forming a collateral attack on said [divorce decree].

In conclusion of law number 14, the trial court provided a list of all of Drew's claims that it concluded were "impermissible collateral attacks" on the divorce decree, which encompassed the same claims referenced in the trial court's conclusion of law number 7,

---

[6] The trial court issued numerous findings supporting its conclusion that Belver did not commit a breach of fiduciary duty as a manager of FAV2 or as a spouse. The trial court also issued numerous findings supporting its conclusion that appellees "did not commit fraud, common law fraud, fraud by affirmative misrepresentation, fraud by nondisclosure, fraudulent inducement, or constructive fraud." Drew raises several challenges to these findings and conclusions. However, because we upheld the trial court's conclusion that res judicata applied to these causes of action, we decline to address Drew's other arguments in relation to those causes of action in his seventh, eighth, thirteenth, sixteenth, and seventeenth issues. *See* TEX. R. APP. P. 47.1. ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

23

which concluded those claims were barred by res judicata. "Res judicata applies to a final divorce decree just as it does to any other final judgment, barring subsequent collateral attack even if the divorce decree improperly divided the property." *Brown v. Brown*, 236 S.W.3d 343, 347 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (first citing *Baxter v. Ruddle*, 794 S.W.2d 761, 762 (Tex. 1990); and then citing *Cook v. Cameron*, 733 S.W.2d 137, 140 (Tex.1987)). As with conclusion of law number 7, conclusion of law numbers 13 and 14 are supported by the trial court's unchallenged finding of fact number 88, which listed "pre-divorce" claims that Drew could have litigated.

However, conclusion of law number 14 also included Drew's breach of divorce decree claim, which was not included in conclusion of law number 7. With respect to his breach of divorce decree claim, conclusion of law number 14 is not supported by the trial court's finding of fact number 88 regarding res judicata. As noted above, Drew's breach of divorce decree claim was not listed in conclusion of law number 7 or finding of fact number 88. This is logical because "[r]es judicata bars post-divorce property division actions, however, only when the divorce decree has disposed of the asset at issue." *Id*. at 348 (citing *Law v. Law*, 792 S.W.2d 150, 152 (Tex. App.—Houston [1st Dist.] 1990, writ denied)). As we have discussed above, the basis of Drew's breach of divorce decree claim was taxes he paid after the divorce that he alleged were attributable to Belver. The divorce decree did not dispose of this claim. *See id.* Instead, the divorce decree contained provisions providing Drew and Belver the right to seek indemnification for payment of taxes after entry of the divorce decree. Consequently, we hold that the trial court's conclusion of law number 14 was erroneous insofar as it held that Drew's breach of

24

divorce decree claim was an "impermissible collateral attack." *See BMC Software Belg., N.V.*, 83 S.W.3d at 794. We sustain Drew's fifteenth issue as it relates to his breach of divorce decree claim.

## V.    FAILURE TO AWARD $8,349

In his fourth issue, Drew argues that the trial court erred "in not awarding him $8,349 for income he was not paid as stated in the '2017 IRS Form K-1.'" He further argues that the trial court failed to "make any findings of fact or conclusions of law regarding the alleged 2017 K-1 payment."

Drew addressed the $8,349 and the "2017 K-1" in the factual background section of his live pleading, as well as in the section pertaining to his breach of fiduciary duty and constructive fraud causes of action. The trial court concluded these causes of action were barred by res judicata, which we upheld in addressing Drew's fourteenth issue. We construe Drew's fourth issue as an argument related to his breach of fiduciary duty and constructive fraud causes of action, which we decline to address as it is not necessary to a final disposition of the case given we have upheld the trial court's conclusion that said causes of action were barred by res judicata. *See* TEX. R. APP. P. 47.1.

To the extent that Drew complains of the trial court's lack of findings and conclusions regarding the "2017 IRS Form K-1," it was incumbent on him to request additional findings and conclusions. After the trial court files original findings of fact and conclusions of law, any party may file a request for amended or additional findings or conclusions within ten days after the filing of the original findings and conclusions by the trial court. TEX. R. CIV. P. 298. "The failure to request amended or additional findings or

25

conclusions waives the right to complain on appeal about the trial court's failure to make the omitted findings or conclusions." *Villalpando v. Villalpando*, 480 S.W.3d 801, 810 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Because Drew failed to request additional findings of fact and conclusions of law, he has waived any complaint that the trial court erred by failing to make any omitted findings and conclusions. *See id.* Drew's fourth issue is overruled.

### VI.    BREACH OF DIVORCE DECREE

In his first issue, Drew argues that the trial court's findings and conclusions that Belver did not commit a breach of contract regarding the divorce decree "were against the great weight and preponderance of the evidence." In his third and tenth issues, Drew also challenges findings and conclusions relevant to his first issue. Because they are related, we address Drew's first, third, and tenth issues together.

In a divorce proceeding, the parties can enter into an agreement over the matters to be resolved in the divorce. *See* TEX. FAM. CODE ANN. § 7.006. "For matters concerning the divorce and determination of the marital estate, the agreement is enforceable as a contract." *Kendrick v. Seibert*, 439 S.W.3d 408, 410–11 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (cleaned up); *see also Hicks v. Hicks*, 348 S.W.3d 281, 283 (Tex. App.— Houston [14th Dist.] 2011, no pet.) (noting that parties to a divorce decree are treated as contracting parties); *Rich v. Rich*, No. 01–03–00078–CV, 2003 WL 21027940, at *2 (Tex. App.—Houston [1st Dist.] May 8, 2003, no pet.) (mem. op.) (holding agreed divorce decree is enforceable as contract and as judgment). None of the parties dispute that Belver and Drew entered into an agreed divorce decree on July 11, 2017. A claim for

26

breach of contract includes the following essential elements: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach. *See Hall v. Lewis*, 639 S.W.3d 197, 209 (Tex. App.—Houston [1st. Dist.] 2021, no pet.).

In his first issue, Drew contends that Belver "owed over $33,000 for income and self-employment taxes for 2016" and that the evidence established that he had paid "$23,934 to the IRS for taxes . . . owed by . . . Belver." According to Drew, Belver "received over $176,000 in income and net profits from [FAV1]" but that the 2016 joint tax return did not show she earned any income. Drew also argues that Belver "represented she would pay all taxes she owed on her personal earnings in the [divorce decree]" and at the time the divorce decree was signed, "she owed a significant amount of money to the IRS for income and self-employment taxes, which was not disclosed to [Drew]." Drew further argues that the $33,000 of "unpaid taxes were solely Belver's responsibility and financial obligations."

The trial court issued several findings of facts relevant to this issue, which we summarize below:

- Belver was the sole member and manager of FAV1 at all relevant times.

- Drew and Belver did not know, at the time of their divorce, what their respective individual or joint federal income tax liability was for 2016.

- Belver intended to file a separate, individual tax return for 2016 prior to the divorce, but she agreed to file a "[m]arried [f]iling [j]ointly" tax return for 2016 based in part on Drew's post-divorce efforts to persuade her to do so.

- The IRS treats the income reported on a joint, married tax return as one income of both spouses without apportionment or partition.

27

- The IRS treats the tax liability arising from a joint, married income tax return as a joint and several liability of both spouses without apportionment or partition.

- Drew would have owed jointly and severally with Belver an income tax debt for 2016 whether his name or Belver's name would have been listed on the Schedule C form.

- Drew and Belver each believed the other would pay the $33,531 of taxes owed for 2016, but neither did so. Neither Drew nor Belver paid direct to the IRS the $33,531 tax debt when it was declared on the joint, married tax return for 2016.

- The remaining outstanding income tax debt of $33,531 arose predominantly from the operation of [FAV1] and to a much lesser extent the operation of [FAV2].

- Drew paid $23,934.00 to the IRS for outstanding income tax debt owed for 2016.

- Belver paid $13,294.58 to the IRS for outstanding income tax debt owed for 2016.

Drew argues in his third issue that the evidence was factually insufficient to support the trial court's finding that he and Belver "respectively agreed and declared under penalties of perjury that they jointly owed $33,531 in federal income taxes for Tax Year 2016." We disagree. With respect to Form 8879, the evidence demonstrates that they provided their own signatures on the form, expressly adopting the pre-type-written "Taxpayer Declaration and Signature Authorization" in Part II. That declaration specifically stated, "*I further declare that the amounts in Part I above are the amounts from my electronic income tax return*." Moreover, the evidence demonstrates that Drew and Belver filed a "joint, married" tax return for 2016. Drew points to no other evidence, and we have found none, that would support a conclusion that the trial court's finding was against the great weight and preponderance of the evidence. Therefore, we conclude that the complained-of finding was supported by factually sufficient evidence. *See Dow Chem. Co.*, 46 S.W.3d at 242.

As part of this third issue, Drew also challenges the trial court's finding regarding

28

the contents of the divorce decree's general indemnification provisions as lacking support by factually sufficient evidence. Specifically, Drew argues that "the indemnification provision of the divorce decree required Belver to indemnify Drew if he had to pay any taxes for her personal earnings." Here, the trial court found that "the express terms of the indemnification provision in the [divorce decree] are to indemnify a 'party not assuming a debt, an obligation, a liability' of the other party."[7] The finding quotes the language found in the general indemnification provisions of the divorce decree. While it is true that the divorce decree also included a tax-indemnification provision to which Drew refers, Drew has not pointed to, and we have not found, contrary evidence regarding the contents of the general indemnification provisions referred to in the trial court's finding. Therefore, we conclude that the trial court's finding was supported by factually sufficient evidence. *See id.* at 242.

Drew also challenges in his third issue the trial court's conclusion that he assumed the tax liability of Belver, and therefore, Drew had no right to indemnification under the general indemnification provisions.[8] As discussed above, the trial court found that Drew and Belver owe jointly and severally an income tax debt in the amount of $33,531, which we have already concluded was supported by sufficient evidence, and is therefore binding on this Court. *See Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners*

---

[7] The trial court made an identical conclusion of law regarding this finding of fact. To the extent Drew complains of this identical conclusion of law, we hold that the identical conclusion of law is actually a finding of fact, though listed as a conclusion of law.

[8] The trial court made an identical finding of fact regarding this conclusion of law. To the extent Drew complains of the identical finding, we hold that the identical finding is actually a conclusion of law, though listed as a finding of fact.

*Ass'n*, 534 S.W.3d 558, 582 (Tex. App.—San Antonio, 2017), *aff'd*, 593 S.W.3d 324 (Tex. 2020). Our sister court in El Paso addressed the joint and several tax liability associated with joint tax returns filed by married couples:

> A joint [federal tax] return must include all income, exemptions, and deductions of both spouses. Generally, both spouses are jointly and severally liable for the tax due on a joint return. Thus, a spouse may be liable for the entire tax liability although the income was totally earned by the other spouse. If a husband and wife file as married filing separately, each is liable only for the tax due on his or her own return.

*Kimsey v. Kimsey*, 965 S.W.2d 690, 696 (Tex. App.—El Paso 1998, pet. denied) (cleaned up); *see also* I.R.C. § 6013(a), (d)(3) (providing that "[a] husband and wife may make a single return jointly of income taxes" and that "if a joint return is made, the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several"). Based on these legal authorities, we hold that the trial court's conclusion was not erroneous. *See BMC Software Belg., N.V.*, 83 S.W.3d at 794; *Kimsey*, 965 S.W.3d at 696; I.R.C. § 6013(a), (d)(3). Drew's third issue is overruled.

However, Drew also argues in his first issue that the trial court "ignored the clear language in the divorce decree that specifically dealt with [Drew and Belver's] 2016 taxes and mandated indemnity if one spouse had to pay the other's spouse's taxes." As noted above, the divorce decree contained a tax-indemnification provision which specifically pertained to taxes that Drew and Belver incurred during 2016. The trial court issued no specific findings regarding whether Belver breached the tax-indemnification provision of the divorce decree. Instead, the trial court found that:

> 107. Since [Drew] and [Belver] filed a 2016 joint, married federal income tax return after their divorce from each other on July 11, 2017, the term reporting party as used in the [divorce decree] is ambiguous when applied

30

to the case to the extent that said term was for a reporting party to be an individual person reporting an individual income instead of two people reporting a joint income for which there would be joint and several liability . . . to the IRS.

108. Regarding the [divorce decree], it was ambiguous because it failed to specify whether the parties were to file a joint federal income tax return for Tax Year 2016; failed to provide a method of preparation for the unfiled 2016 federal income tax return; and failed to provide for the eventuality of a tax refund for any of Tax Year 2016.

In its conclusions of law, the trial court concluded that the tax-indemnity provision of the divorce decree was "patently and latently ambiguous."

Drew challenges these findings and conclusions in his tenth issue, arguing that Belver never pleaded ambiguity as a defense. "Generally, a party is required to expressly plead affirmative defenses 'and any other matter constituting an avoidance or affirmative defense.'" *Jamshed v. McLane Exp. Inc.*, 449 S.W.3d 871, 880–81 (Tex. App.—El Paso 2014, no pet.) (first citing TEX. R. CIV. P. 94; and then citing *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988)). "Ambiguity is an affirmative defense that must be raised below." *Id.* (citing *Gulf & Basco Co. v. Buchanan*, 707 S.W.2d 655, 656 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.)). We agree with Drew. The record demonstrates that appellees did not expressly plead ambiguity to the trial court.

However, appellees argue that the matter was tried by consent. *See Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex.1993) (stating that a court may conclude a contract is ambiguous even in the absence of such a pleading by the parties when tried by consent). The trial court has broad discretion in determining whether an unpleaded issue was tried by consent. *Case Corp. v. Hi–Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 771 (Tex. App.—Dallas 2005, pet. denied). However, although that

31

discretion is to be exercised liberally in favor of justice, trial by consent is the exception, not the rule, and should not be inferred in doubtful cases. *Id.* at 772. To decide whether an issue was tried by consent, we review the record "not for evidence of the issue, but rather for evidence of trial of the issue." *Id*. at 771; *see also City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 744 (Tex. App.—Fort Worth 2008, pet. dism'd). The unpleaded issue may be deemed tried by consent when the evidence on the issue is developed without objection under circumstances indicating both parties understood the issue was being contested. *Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009) ("When both parties present evidence on an issue and the issue is developed during trial without objection, any defects in the pleadings are cured at trial, and the defects are waived."); *Case Corp.*, 184 S.W.3d at 771; *Moore v. Altra Energy Techs., Inc.*, 321 S.W.3d 727, 734 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). An issue is not tried by consent merely because there is evidence on the issue, but can be deemed tried by consent when both parties present conflicting evidence on the subject. *Ingram*, 288 S.W.3d at 893. "On the other hand, an issue is not tried by consent when the evidence relevant to the unpleaded issue is also relevant to a pleaded issue because admitting that evidence would not be calculated to elicit an objection and its admission ordinarily would not prove the parties' 'clear intent' to try the unpleaded issue." *Hampden Corp. v. Remark, Inc.*, 331 S.W.3d 489, 496 (Tex. App.—Dallas 2010, pet. denied) (first citing *Case Corp.*, 184 S.W.3d at 771; and then citing *Moore*, 321 S.W.3d at 734)).

The parties cite to portions of the record in support of their respective positions regarding whether ambiguity was tried by consent, which we summarize below. On

32

January 11, 2021, Drew filed a motion for partial summary judgment requesting that the trial court find "the indemnity provision contained in the [divorce decree] is unambiguous and enforceable as a matter of law" and Belver failed to assert ambiguity as an affirmative defense. On February 26, 2021, the trial court granted Drew's motion. On the first day of trial, Drew filed "Plaintiff's Summary of Relief Requested," which reiterated that the trial court had previously granted his partial summary judgment motion.

On December 1, 2020, Belver filed a motion requesting that the trial court take judicial notice of "the relevant federal law pertaining to federal income tax imposed upon the filing of joint tax returns" under Chapter 26 of the Internal Revenue Code of the United States. Approximately a year and a half later, Drew responded that "EVEN IF DIVORCE DECREE WAS AMBIGUOUS, THE DEFENSE WOULD BE LEGALLY UNFOUNDED." Belver asserts on appeal that "Drew argued the merits against ambiguity . . . without asserting the interlocutory partial summary judgment" in his response to her motion. We disagree. Drew's response merely laid out the law regarding ambiguity of contracts, which we conclude is not dispositive on whether ambiguity was tried by consent. *See Case Corp.*, 184 S.W.3d at 772 ("[T]rial by consent is the exception, not the rule, and should not be inferred in doubtful cases.").

Belver further argues that "significant evidence was admitted without objection through Galvez as he testified about the 2016 joint and several tax liability; how the IRS treats that joint liability; the meaning of Form 8879; and the application of federal law to joint filers," that all of "that evidence goes to the issue of the ambiguity of the divorce decree," and that Drew failed to object to this evidence "based upon failure to plead

33

ambiguity." We disagree. The evidence referenced was relevant to whether Belver breached the divorce decree, a pleaded issue, and not relevant as to whether the divorce decree was ambiguous, an unpleaded issue. *See Hampden Corp.*, 331 S.W.3d at 496. Drew did not testify that the tax indemnification provision was ambiguous, and Belver has not pointed to, and we have not found, any other evidence in the record demonstrating that the parties presented conflicting evidence regarding ambiguity. *See Ingram*, 288 S.W.3d at 893. Accordingly, we hold there was no evidence of the ambiguity issue developed without objection at trial under circumstances indicating both parties understood that issue was being contested, and thus, the ambiguity issue was not tried by consent. *See id.* Therefore, it was erroneous for the trial court to issue findings in support of its conclusions of law holding that the tax indemnity provision of the divorce decree was ambiguous.[9] *See BMC Software Belg., N.V.*, 83 S.W.3d at 794. Accordingly, we sustain Drew's tenth issue.

However, Drew's tenth issue is not dispositive of his first issue. We next consider whether the trial court's judgment that Drew take nothing on his breach of divorce decree claim can be sustained pursuant to the remaining relevant findings. As noted above, the trial court issued findings that Belver did not commit a breach of the divorce decree, but did not issue specific findings regarding its determination that Belver did not breach the tax indemnity provision of the divorce decree. But pursuant to Rule 299, we may imply

---

[9] Because we have concluded that ambiguity was not tried by consent, we decline to address Drew's other arguments related to the ambiguity issue in his eleventh and twelfth issues. *See* TEX. R. APP. P. 47.1. ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

findings because the trial court found at least one element regarding Drew's breach of divorce decree claim. *See Dessens*, 658 S.W.3d at 444; TEX. R. CIV. P. 299.

However, Drew suggests that we may not presume implied findings pursuant to Rule 299 because the trial court's take nothing judgment was based on an erroneous interpretation of law—namely, ambiguity. *See Dessens*, 658 S.W.3d at 444; *Clinton*, 621 S.W.3d at 852 ("[W]e will not presume findings when 'the record reveals that the trial court based its judgment on an erroneous interpretation of law, and failed to answer a factual question necessary to resolve the case under a correct interpretation.'"). Even assuming the trial court's findings and conclusions regarding ambiguity were relevant to an erroneous interpretation of law, we nevertheless conclude the trial court did not fail to issue "findings that would control the case under a correct legal interpretation." *Clinton*, 621 S.W.3d at 852. Therefore, we are not precluded from presuming that the trial court impliedly found that Belver did not breach the tax indemnity provision of the divorce decree. *See id.*; TEX. R. CIV. P. 299.

Specifically, the trial court found that Drew and Belver authorized the filing of the 2016 joint income tax return that indicated a joint and several tax liability in the amount of $33,531; that the income tax debt of $33,531 arose predominantly from the operation of FAV1; that Belver was the sole member and manager of FAV1; and that Drew paid $23,934 towards that tax liability. The trial court also found that the IRS treats the income reported on a joint, married tax return as one income of both spouses without apportionment or partition, and treats the tax liability arising from a joint, married income tax return as a joint and several liability of both spouses without apportionment or partition.

35

"[W]hen the appellate record includes a reporter's record, a trial court's findings of fact are not conclusive and are binding only if supported by the evidence." *Teal Trading & Dev., LP*, 534 S.W.3d at 582. We have reviewed the evidence admitted at trial and conclude that these findings are supported by legally and factually sufficient evidence. *See Dow Chem. Co.*, 46 S.W.3d at 241–42.

The tax indemnity provision provided that "each party shall timely pay and indemnify and hold the other party and his or her property harmless from any federal income tax liability attributable to the personal earnings of the reporting party." By filing a joint, married income tax return, there were no "personal earnings" attributable to Belver or Drew because their income is treated by the IRS as one income without apportionment or partition. Furthermore, their tax liability is treated by the IRS as joint and several without apportionment or partition. Therefore, the evidence at trial supports the trial court's implied finding that Belver did not breach the tax indemnity provision of the divorce decree, and we do not find that said finding is against the great weight and preponderance of the evidence. *See Dow Chem. Co.*, 46 S.W.3d at 242. Accordingly, the controlling findings support the trial court's "take nothing" judgment regarding Drew's breach of divorce decree claim. *See Wise Elec. Coop., Inc. v. Am. Hat Co.*, 476 S.W.3d 671, 679 (Tex. App.—Fort Worth 2015, no pet.). We overrule Drew's first issue.

## VII. EQUITABLE REIMBURSEMENT UNDER THE TEXAS FAMILY CODE

In his second issue, Drew argues that the trial court erred in awarding him $24,949 on the basis of a claim of "equitable reimbursement" under the Family Code instead of contractual indemnity. The trial court issued the following relevant conclusions of law:

76. Based upon the *fair notice pleading rule*, [Drew] sought both an equitable reimbursement claim under TEX. FAM. CODE [ANN.] § 3.402(a)(1) and also a post-judgment division of undivided community property under Chapter 9 of the Texas Family Code.

77. Accordingly, in the interest and under the principles of equity, on his equitable reimbursement claim, [Drew] should be awarded judgment on his reimbursement claim the sum of $23,934.00 he paid toward the outstanding 2016 joint federal income tax debt; plus $1,015.00 he paid for accountants regarding the outstanding 2016 joint federal income tax debt.

In connection to the above conclusions, the trial court found that:

109. [Drew] asserted multiple claims and sought various types of relief, including a claim for equitable reimbursement to his separate estate from the estate of [Belver]. The reimbursement he sought was for the 2016 federal income taxes he paid toward the outstanding 2016 joint and several federal income tax debt he shared with [Belver]. [Drew] also sought accounting fees, costs, and attorney fees under his equitable reimbursement claim.

111. Accordingly, in the interest and under the principles of equity, the Court determined that on his equitable reimbursement claim. [Drew] should be awarded reimbursement of the $23,934.00 he paid toward the outstanding 2016 joint federal income tax debt; plus, be awarded reimbursement of $1,015.00 paid for accountants regarding the outstanding 2016 joint federal income tax debt. Said reimbursement is from [Belver's] separate estate to [Drew's] separate estate.

The trial court's finding of fact number 111 is substantially identical to its conclusion of law number 77. Drew argues that conclusion of law numbers 76 and 77 and finding of fact numbers 109 and 111 "are not supported by and is contrary to the pleadings, evidence, and established Texas law." Specifically, he argues that he "never pleaded for 'equitable reimbursement' nor made any claim for reimbursement under the Texas Family Code Chapters 3 or 9."

"A judgment . . . must be supported by the pleadings, and a party may not be granted relief in the absence of pleadings to support such relief." *Salomon v. Lesay*, 369

37

S.W.3d 540, 553 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (first citing TEX. R. CIV. P. 301; and then citing *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983)). "The purpose of pleadings is to define the issues at trial." *King v. Lyons*, 457 S.W.3d 122, 126 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (quoting *Garvey v. Vawter*, 795 S.W.2d 741, 742 (Tex. 1990)). "A pleading is sufficient if it gives the opposing party adequate information to enable him to prepare a defense." *Id.* (citing *Roark v. Allen*, 633 S.W.2d 804, 809–10 (Tex. 1982)). Though we liberally construe a petition to include claims that may reasonably be inferred from the language used, we may not "use a liberal construction of the petition as a license to read into the petition a claim that it does not contain." *Flowers v. Flowers*, 407 S.W.3d 452, 458 (Tex. App.—Houston [14th Dist.] 2013, no pet.). "Similarly, while a prayer for general relief may include relief consistent with the petitioner's pleading, it cannot be used to 'enlarge a pleading to the extent that it embraces an entirely different cause of action for which fair notice does not exist.'" *King*, 457 S.W.3d at 126 (quoting *Stoner v. Thompson*, 578 S.W.2d 679, 683 (Tex. 1979)).

In Drew's live pleading, he sought "[r]eimbursement and/or indemnification" for past due income and self-employment taxes that were owed by appellees. Belver argues that Drew "expressly filed claims under the Texas Family Code" by asserting that he was "entitled to recover all reasonable and necessary attorney's fees incurred . . . [TEX. FAM. CODE ANN.] § 9.205, . . . for which he hereby sues." We first note that Belver's argument does not quote the relevant section of Drew's live pleading in full, which was as follows:

**22. ATTORNEY'S FEES.**

As a result of [appellees'] failure to pay all sums lawfully owed to [Drew], he was forced to hire the undersigned attorney. [Drew's] claims

have been timely presented to [appellees] and remain unpaid. [Drew] is entitled to recover all reasonable and necessary attorney's fees incurred herein pursuant to T[EX]. C[IV]. P[RAC]. & R[EM]. C[ODE] A[NN]. § 38.001, *et seq*., T[EX]. F[AM]. C[ODE] A[NN]. § 9.205, and the [divorce decree], for which he hereby sues. [Drew] sues for all reasonable and necessary attorney's fees through trial, all post-trial motions, and any appeals to the Court of Appeals and Supreme Court.

Pursuant to T[EX.] C[IV.] P[RAC]. & R[EM]. C[ODE] A[NN]. § 31.002(e), [Drew] further sues for all reasonable and necessary attorney's fees and costs necessary to collect any judgment rendered against the [appellees].

The Texas Family Code provides that a former spouse "may file a suit . . . to divide property not divided or awarded to a spouse in a final decree of divorce." *See* TEX. FAM. CODE ANN. § 9.201(a). Section 9.205 of the Texas Family Code provides that the trial court may award reasonable attorney's fees "[i]n a proceeding to divide property previously undivided in a decree of divorce." *See id.* § 9.205. We first note that Drew's live pleading does not cite or reference § 9.201. *See id.* § 9.201. While we acknowledge that Drew expressly requested attorneys' fees under § 9.205, nothing in his live pleading alleges facts regarding any property that was not previously divided in their divorce decree. *See id.* §§ 9.201, .205. We conclude that a claim for undivided property pursuant to § 9.201 cannot be reasonably inferred from the language of Drew's live pleading. *See Flowers*, 407 S.W.3d at 458. Therefore, the trial court's conclusion of law number 76 that Drew requested "a post-judgment division of undivided community property under Chapter 9 of the Texas Family Code" was erroneous.

Belver suggests that by specifically requesting "[r]eimbursement and/or indemnification," Drew made a claim for "equitable reimbursement" under § 3.402. Former § 3.402(a)(1) of the Texas Family Code provided that a claim for reimbursement

39

includes "payment by one marital estate of the unsecured liabilities of another marital estate." *Id.* § 3.402(a)(1). A marital estate can be comprised of three separate estates: (1) the community property owned by the spouses together (the community marital estate); (2) the separate property owned individually by the husband (a separate marital estate); and (3) the separate property owned individually by the wife (also a separate marital estate). *Id.* § 3.401(4). Drew's live petition does not cite § 3.402 of the Texas Family Code or utter the phrase "equitable reimbursement." Rather, Drew pleaded that he sought "[r]eimbursement and/or indemnification" for past due income and self-employment taxes that were owed by appellees.[10] The live pleading alleges that these taxes were paid by Drew after the divorce decree was entered.

Belver directs us to Drew's testimony affirming that she had not reimbursed or offered to reimburse him for any of the taxes he paid on her behalf. To the extent that this can be construed as an argument that Drew tried an equitable reimbursement claim under § 3.402(a)(1) by consent, we note that nothing in the record suggests the existence of a "payment by one *marital* estate of the unsecured liabilities of another *marital* estate." *See* Tex. Fam. Code Ann. § 3.402(a)(1) (emphasis added). We note that the general indemnification provisions of the divorce decree included the term "reimburse," which was

---

[10] We note that Drew's eighth petition referenced the divorce decree's tax indemnification provision. The petition also referenced the general indemnification provisions but did not expressly refer to those provisions' use of the term "reimburse":

> IT IS ORDERED that the indemnifying party will *reimburse* the indemnified party, on demand, for any payment made by the indemnified party at any time after the entry of the divorce decree to satisfy any judgment of any court of competent jurisdiction or in accordance with a bona fide compromise or settlement of claims, demands, or actions for any damages to which this indemnity relates.

(Emphasis added).

one basis of Drew's breach of divorce decree claim. The evidence demonstrated that Drew paid income taxes he claimed was attributable to Belver over two years after the divorce decree was entered, when neither were each other's spouses. *See id.* § 3.401(4). The fact that Drew and Belver were once spouses does not automatically transform evidence relevant towards Drew's breach of divorce decree claim into evidence relevant to a reimbursement claim under § 3.402(a)(1) such that the "parties both understood the issue was in the case."[11] *See Case Corp.*, 184 S.W.3d at 771; *Sage St. Assocs.*, 863 S.W.2d at 446. Moreover, trial by consent should not be inferred in doubtful cases. *See Case Corp.*, 184 S.W.3d at 771. For all the reasons above, we also conclude that the trial court's conclusion of law number 76 was erroneous.

We further conclude that the trial court's finding of fact number 109 that Drew raised a "claim for equitable reimbursement" is not supported by legally and factually sufficient evidence. *See City of Keller*, 168 S.W.3d at 822; *Dow Chem. Co.*, 46 S.W.3d at 242. Because we have held that Drew did not assert an equitable reimbursement claim

---

[11] When presenting closing arguments to the trial court, Drew requested "reimbursement indemnification for the past due income and self-employment taxes owed by the [appellees] which have been paid by [him] including withholding of his income tax refunds." Drew made no mention of Texas Family Code § 3.402(a)(1). Appellees expressed in their closing arguments, among other things, the following:

> What should be a simple contract dispute has moved into this tort claim case for amazing sums of money that they are seeking. Most of which, we believe, is barred by res judicata.
>
> . . . .
>
> So here's the bottom line, Your Honor, what are we asking for? We're asking for adjudication on the breach of contract claim. I think its very clear from the briefing we've provided, we've offered a defense in terms of federal law, in terms of the joint several liability.

Appellees made no mention of Texas Family Code § 3.402(a)(1) in their closing arguments.

41

under § 3.402(a)(1), the trial court's conclusion of law number 77 explaining its award for Drew's "equitable reimbursement claim" is also erroneous. Accordingly, the trial court's judgment is not supported by the pleadings. *See* TEX. R. CIV. P. 301; *Cunningham*, 660 S.W.2d at 813; *Salomon*, 369 S.W.3d at 553. Nor was the equitable reimbursement claim under § 3.402(a)(1) tried by consent. "A judgment that is not supported by any pleading or tried by consent is void." *Hampden Corp.*, 331 S.W.3d at 499 (citing *Webb v. Glenbrook Owners Ass'n, Inc.*, 298 S.W.3d 374, 380 (Tex. App.—Dallas 2009, no pet.) (op. on reh'g)). Accordingly, we must reverse the judgment's awards regarding the two reimbursement claims and render those awards as void. *See id.*; *see also Rivera v. Figueroa*, No. 04-18-00256-CV, 2019 WL 691502, at *3 (Tex. App.—San Antonio Feb. 20, 2019, no pet.) (mem. op.) (reversing provisions of a judgment that were unsupported by the pleadings and rendering said provisions as void).

## VIII. "CLARIFYING ORDER" UNDER THE TEXAS FAMILY CODE

We next address Drew's ninth issue, by which he argues the trial court erred in issuing a "clarifying order" based on its conclusions that the divorce decree contained ambiguities.

Generally, a court that renders a divorce decree retains continuing subject-matter jurisdiction to clarify and to enforce the decree's property division. TEX. FAM. CODE ANN. § 9.002. The trial court may enter an order of clarification if its divorce decree is ambiguous. *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011) (citing TEX. FAM. CODE ANN. §§ 9.006, .008). A court may enter a clarifying order to enforce compliance or assist with the implementation of an insufficiently specific decree. TEX. FAM. CODE ANN.

§§ 9.004, .006, .008; *see also Dalton v. Dalton*, 551 S.W.3d 126, 140 (Tex. 2018). Specifically, a trial court "may specify more precisely the manner of effecting the property division previously made or approved if the substantive division of property is not altered or changed." TEX. FAM. CODE ANN. § 9.006. A court may render a clarifying order "[o]n the request of a party or on the court's own motion." *Id.* § 9.006(a). However, the court "may render a clarifying order setting forth specific terms to enforce compliance with the original division of property" "[o]n a finding by the court that the original form of the division of property is not specific enough to be enforceable by contempt." *Id.* § 9.008(b).

In its conclusions of law, the trial court concluded that the divorce decree was "patently and latently ambiguous" and required a "clarifying order." The trial court also concluded that "[t]he Final Judgment in this case, as supported by these Findings of Fact and Conclusions of Law, serves as a clarifying order that has the effect of placing [Drew] in the position he would have been in had he filed an individual and separate joint federal income tax return for 2016." We have already held that appellees failed to plead ambiguity as an affirmative defense and the issue was not tried by consent. Drew argues that appellees "never plead[ed], requested, or even mentioned in trial" a clarifying order. We agree. The record does not demonstrate that appellees requested a clarifying order in its pleadings or at the bench trial. *See id.* § 9.006(a).

Drew further argues that "[n]owhere in the record did the trial court make any motion for a clarifying order or was it even mentioned by the trial court." *See id.* Even assuming that the clarification order was done "on the court's own motion," Drew argues in his reply brief that the trial court's judgment contained "no terms . . . for the enforcement

43

of compliance." We agree. Nothing in the trial court's judgment indicates it was a clarifying order to enforce compliance or assist with the implementation of an insufficiently specific divorce decree. TEX. FAM. CODE ANN. §§ 9.004, .006, .008; *see also Dalton*, 551 S.W.3d at 140. Because the judgment is not a clarifying order, nor contains terms that can be construed as one, the trial court's conclusion that its judgment "serves as a clarifying order" was erroneous. We sustain Drew's ninth issue.

### IX.    FINDING REGARDING BELVER'S REPRESENTATIONS IN DIVORCE DECREE

In his fifth issue, Drew argues that the evidence was factually insufficient to support the trial court's finding of fact number 45, which stated that "the representations with the aforesaid [divorce decree] by [Belver] and [Drew] regarding general financial liabilities and, as applied to taxes, federal income tax liabilities, was truthful and correct as of July 11, 2017."

Drew contests this finding as applicable to Belver. In support of this issue, Drew points to evidence that Belver "owed a significant amount of money to the [IRS] for 2016 income and self-employment taxes, which was not disclosed to [him]," and that she "warranted and represented in the [divorce decree] that 'she has not incurred any outstanding debt, obligation, or other liability to which the other party is or may be liable, other than those described in [the divorce] decree.'" Drew argues that "[t]he circumstantial evidence dictated Belver would know that if she earned over $176,000 in income, she would owe a significant amount of income and self-employment taxes." However, Belver testified that she did not know her tax liability for her business for 2016 at the time she signed the divorce decree. Belver further testified that she did not meet with her

44

accountant to determine her tax liability for 2016 before signing the divorce decree. The record is undisputed that Drew and Belver filed their joint tax return after they signed the divorce decree. As the factfinder, the trial court was entitled to credit Belver's testimony, and we must defer to the trial court's factual determinations of witness credibility and demeanor. *See City of Keller*, 168 S.W.3d at 827. Accordingly, we conclude the trial court's finding was not against the great weight and preponderance of the evidence. *See Dow Chem. Co.*, 46 S.W.3d at 242. We overrule Drew's fifth issue.

## X.     ATTORNEY'S FEES

The trial court ordered that Drew and Belver pay the attorneys' fees and costs that each incurred. In its conclusions of law, the trial court explained that Drew sought "an equitable reimbursement claim under Tex[as] Fam[ily] Code § 3.402(a)(1)" and held that he "should be awarded a judgment on his reimbursement claim[s]." In addition, the trial court concluded the following:

> [Drew] did not prevail on any claim for which an award of attorneys' fees and costs was mandatory. [Drew] did prevail on an equitable claim for which an award of attorneys' fees and costs was discretionary with the Court and in equitable consideration, the Court determined not to award said attorneys' fees and costs.

Drew argues in his nineteenth issue that the trial court erred in failed to award him mandatory trial and appellate attorney's fees under his breach of divorce decree claim. If a plaintiff prevails on a breach-of-contract claim and recovers damages, an award of reasonable attorney's fees is mandatory, and "the trial court has no discretion to deny them." *Smith v. Patrick W.Y. Tam Tr.*, 296 S.W.3d 545, 547 (Tex. 2009); TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8). However, Drew did not prevail on his breach of divorce

45

decree claim, and we have upheld the trial court's take nothing judgment regarding this claim. Accordingly, we overrule Drew's nineteenth issue.

In his sixth, twentieth, twenty-first, twenty-second, and twenty-third issues, Drew challenges the trial court findings regarding why it refused in its discretion to award Drew attorney's fees in relation to the "equitable reimbursement" claims the trial court found in Drew's favor. However, we have determined above that the "equitable reimbursement" claims in the trial court's judgment were unsupported by any pleading nor tried by consent, and are therefore void. Consequently, Drew has not prevailed on any claim by which he may be entitled to a discretionary award of attorney's fees. Accordingly, we decline to address Drew's arguments related to the trial court's findings regarding why it refused in its discretion to award Drew attorney's fees for the "equitable reimbursement" claims. *See* TEX. R. APP. P. 47.1. ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

In his twenty-third issue, Drew also challenges the trial court findings and conclusions holding that his attorney failed to segregate recoverable from unrecoverable attorney's fees. Again, because Drew has not prevailed on any claim by which he may be entitled to discretionary or mandatory attorney's fees, we decline to address his challenges to the trial court's findings and conclusions in relation to the segregation of his attorney's fees. *See id.*

## XI.    EVIDENTIARY RULINGS

In his eighteenth issue, Drew argues the trial court erred when it permitted Belver

46

to testify regarding what Drew describes as "bad acts" over his objection.

## A.      Standard of Review and Applicable Law

We review an evidentiary ruling for an abuse of discretion. *Graham v. Scott*, 547 S.W.3d 245, 249 (Tex. App.—Houston [1st Dist.] 2017, no pet.). A trial court abuses its discretion when its ruling on the admission or exclusion of evidence is "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law." *Id.* In making this determination, we review the entire record as a whole and "require the complaining party to demonstrate that the judgment turns on the particular evidence admitted." *Id.* Specifically in civil cases, Rule 44.1(a)(1) of the Texas Rules of Appellate Procedure provides, "No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of . . . probably caused the rendition of an improper judgement." TEX. R. APP. P. 44.1(a)(1).

Relevant evidence is presumed to be admissible. *See* TEX. R. EVID. 402. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *Id.* R. 401. "Evidence of other wrongs or acts is not admissible to prove character in order to show 'action in conformity therewith.'" *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 235 (Tex. 2011) (quoting former TEX. R. EVID. 404). However, such evidence may be admissible for "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2).

47

**B.     Analysis**

In his brief, Drew complains that the trial court erred in permitting Belver to testify as to the reason why "[she and Drew] got divorced" over his objection. Specifically, Drew argues the trial court abused its discretion in permitting Belver's testimony that he allegedly assaulted her while in Mexico, and that said testimony was an inadmissible "bad act[]" under Texas Rules of Evidence 404(b).

To preserve error for appellate review the complaining party must timely and specifically object to the evidence and obtain a ruling. *See* TEX. R. APP. P. 33.1(a); *see also* TEX. R. EVID. 103(a)(1). Further, a "complaint on appeal that does not comport with the party's objection at trial is not preserved for review." *Martinez Jardon v. Pfister*, 593 S.W.3d 810, 831 (Tex. App.—El Paso 2019, no pet.). While Drew timely raised an objection when Belver's counsel asked her to explain why she decided to divorce him, his objection was to relevance, and not Rule 404(b). *See* TEX. R. EVID. 404(b)(2). Drew's argument on appeal does not comport with his objection made in the trial court, and he has therefore failed to preserve this issue for our review. *See* TEX. R. APP. P. 33.1(a); *Pfister*, 593 S.W.3d at 831.

Drew also argues that the trial court erred in permitting Belver to testify regarding a defamation lawsuit he filed against her for driving her daughter to the police department to file a report when her daughter "made an outcry." Drew lodged nonresponsive and relevance objections to this testimony, but not Rule 404(b). Therefore, Drew's complaints on appeal do not comport with his objections at trial, and he has failed to preserve this issue. *See* TEX. R. APP. P. 33.1(a); *Pfister*, 593 S.W.3d at 831.

48

In a single sentence, Drew argues that all the complained-of testimony "was not relevant to any issue in the case." Even assuming the complained-of testimony was not relevant and the trial court erred in admitting it on that basis, Drew has failed to demonstrate that the judgment turned on the complained-of testimony. *Graham*, 547 S.W.3d at 249. Drew has not shown the trial court abused its discretion. Drew's eighteenth issue is overruled.

## XII.   CUMULATIVE ERROR

In his twenty-fourth issue, Drew suggests we "remand for new trial" based on cumulative error. "[T]he 'cumulative error' doctrine . . . recognizes that while each individual error, when analyzed separately, may be harmless, their combined effect could constitute harmful error." *In re E.R.C.*, 496 S.W.3d 270, 281 (Tex. App.—Texarkana 2016 pet. denied) (first citing *Strange v. Treasure City*, 608 S.W.2d 604, 609 (Tex. 1980); and then citing *Fibreboard Corp. v. Pool*, 813 S.W.2d 658, 695–96 (Tex. App.—Texarkana 1991, writ denied)). If there are no errors, cumulative error issues are rejected. *See Owens v. State*, 96 S.W.3d 668, 673 (Tex. App.—Austin 2003, no pet.); *Pool*, 813 S.W.2d at 696. Therefore, before errors can be cumulative, they must first be shown to exist. Our appellate rules require that the appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). Drew cites to no errors in support of his argument and has therefore waived this issue by inadequate briefing. *See id.* We overrule Drew's twenty-fourth issue.

## XIII.   CONCLUSION

We reverse the trial court's judgment regarding its awards of the two

49

reimbursement claims, and judgment is rendered that the awards are void. The trial court's judgment is affirmed in all other aspects.

CLARISSA SILVA
Justice

Delivered and filed on the
24th day of July, 2025.